# Exhibit 1

# Exhibit 1

Electronically Issued
8/20/2018 1:00 PM

**SUMM**
Robert A. Nersesian
Bar No: 2762
**NERSESIAN & SANKIEWICZ**
528 South Eighth
Las Vegas, Nevada 89101
Phone: (702) 385-5454
Fax: (702) 385-7667
Attorney for Plaintiff

## DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| Michael Nannis, | ) Case No.: A-18-779248-C |
| Plaintiff, | ) Dept. No.: I |
| vs. | ) |
| SB Gaming, LLC, d/b/a SLS Las Vegas, and Does I-XX | ) |
| Defendants. | ) |

## SUMMONS – CIVIL

**NOTICE! YOU HAVE BEEN SUED.  THE COURT MAY DECIDE AGAINST YOU WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 20 DAYS. READ THE INFORMATION BELOW.**

**TO THE DEFENDANT(S):**

> *SB Gaming, LLC d/b/a SLS Las Vegas*

A civil Complaint has been filed by the Plaintiff(s) against you for the relief set forth in the Complaint.

1.   If you intend to defend this law suit, within 20 days after this Summons is served on you, exclusive of the day of service, you must do the following:

-1-

a. File with the Clerk of this Court, whose address is shown below, a formal written response to the Complaint in accordance with the rules of the Court, with the appropriate filing fee.

b. Serve a copy of your response upon the attorney whose name and address is shown below.

2. Unless you respond, your default will be entered upon application of the Plaintiff(s) and failure to so respond will result in a judgment of default against you for the relief demanded in the Complaint, which could result in the taking of money or property or other relief requested in the Complaint.

3. If you intend to seek the advice of an attorney in this matter, you should do so promptly so that your response may be filed on time.

4. The State of Nevada, its political subdivisions, agencies, officers, employees, board members, commission members and legislators each have 45 days after service of this Summons within which to file an Answer or other responsive pleading to the Complaint.

STEVEN D. GRIERSON
CLERK OF THE COURT

Submitted by:

8/20/2018

By: /s/ Robert A. Nersesian          By: _____
Nersesian & Sankiewicz              Deputy Clerk        Date
528 South Eighth Street             Regional Justice Center
Las Vegas, Nevada 89101             200 Lewis Avenue   Vivian Canela
                                    Las Vegas, Nevada 89155

**NOTE: When service is by publication, add a brief statement of the object of the action. See Nevada rules of Civil Procedure 4(b).**

Electronically Filed
8/10/2018 2:18 PM
Steven D. Grierson
CLERK OF THE COURT

**COMJD**
Robert A. Nersesian
Bar No: 2762
**NERSESIAN & SANKIEWICZ**
528 South Eighth
Las Vegas, Nevada 89101
Phone: (702) 385-5454
Fax: (702) 385-7667
Attorney for Plaintiff

## DISTRICT COURT

## CLARK COUNTY, NEVADA

|  |  |
|---|---|
| Michael Nannis, | ) Case No.:  A-18-779248-C |
|  | ) Dept. No.:      Department 1 |
| Plaintiff, | ) |
|  | ) |
| vs. | ) |
|  | ) |
| SB Gaming, LLC, d/b/a SLS Las Vegas, | ) |
| and Does I-XX | ) **COMPLAINT AND JURY DEMAND** |
|  | ) |
| Defendants. | ) |
|  | ) |

## COMPLAINT

COMES NOW Plaintiff, by and through his attorney, Robert A. Nersesian of

NERSESIAN & SANKIEWICZ and for his causes of action against defendants, allege as

follows:

### JURISDICTIONAL AND COMMON ALLEGATIONS

1.  The named defendant, SB Gaming, LLC ("SLS") does business in Clark County, Nevada.

2.  The events out of which this matter arises occurred in Clark County, Nevada.

3.  SLS operates a casino on the Las Vegas Strip.

4.  On April 1, 2018, Plaintiff was a guest, customer, and business invitee at SLS.

5.  Doe defendants are the employees of SLS acting within the scope of their employment in

    accomplishing the following described torts committed against the Plaintiff.  They

-1-

include all persons who in their employment or putative employment with SLS harmfully or offensively touched the Plaintiff, those individuals who controlled the illegal and tortious detention of the Plaintiff, the employees of SLS who made and implemented the decision to detain Plaintiff and forcefully detain Plaintiff at SLS, and those persons directing or causing the aforesaid actions. Plaintiff is currently unaware of the identities of these individuals.

6. In the morning of April 1, 2018 Plaintiff was playing blackjack at SLS.

7. While playing blackjack he had some casual social conversation with pit personnel.

8. At no time on April 1, 2018, at SLS did the Plaintiff represent or allude to anyone, including SLS personnel:

    a. That he was armed;

    b. That he was a threat to SLS or anyone within SLS; or

    c. That he was a risk of creating a disturbance within SLS.

9. Without warning or cause, and without knowledge, while sitting at the blackjack table at SLS, three or more security personnel working within the course and scope of their employment with SLS came up behind Plaintiff, two of them grabbed Plaintiff at or about each upper arm and shoulder, and Plaintiff was violently thrown to the floor.

10. Plaintiff was then put upon by the security personnel, and despite no resistance whatsoever, was told to "stop resisting," was physically and aggressively pushed further into the ground and placed in handcuffs.

11. Plaintiff was then frisked on the floor of the casino, determined to not be armed, and thereafter taken physically to an apparent security holding room within SLS. Although not the case, it appears also worth mentioning that even if the Plaintiff were armed, there

is no crime associated with merely possessing a firearm in a casino, and Defendants had no information or knowledge that the Plaintiff was in any way doing anything improper even if they believed Plaintiff was armed.

12. During the initial seizure, the tacklinig, the handcuffing, and asportation to the security office, numerous third party customers of SLS witnessed the actions of the security personnel taken against the Plaintiff.

13. As Plaintiff pled for a reason or explanation for this assault, battery, and seizure of him, the only answer he got was the he was to 'shut up.'

14. Upon arrival in the security office the security personnel, through actions as well as words amongst themselves, let it be known that for purposes of the detention, at the time Plaintiff was thrown to the ground, they would claim that they suspected the Plaintiff might be armed.

15. Nothing concerning the Plaintiff's appearance gave any indication that he was armed, and, in fact, his appearance gave every indication that he was not armed.

16. While within the casino and prior to being taken to the security office, the security personnel of the SLS recognized that the Plaintiff was not armed, but continued to hold him in custody regardless.

17. For each of the causes of action stated below, Plaintiff has suffered the following injuries and attendant damages:

    a. Contusions;

    b. Emotional distress;

    c. Mental anguish;

    d. Humiliation;

  e.  Loss of reputation;

  f.  Outrage;

  g.  Physical distress and pain and suffering as a result of the physical captivity and batteries suffered by him;

  h.  Physical injuries inclusive of strained muscles;

  i.  Mortification;

  j.  Loss of sleep and its attendant discomfort;

  k.  Mental suffering;

  l.  A general loss of faith in society, justice, and fellow citizens;

  m. Loss of liberty; and

  n.  Such other damages as the trier of fact determines.

All in an amount in excess of $15,000.00

18. The actions taken by SLS and its personnel acting within the course and scope of their employment were undertaken with oppression, fraud, and malice, and Plaintiff is entitled to punitive damages under the following causes of action, save for the fourth cause of action.

19. SLS, falsely constructed and represented a basis to detain the Plaintiff on the fabricated assertions of Plaintiff being suspected of being in possession of a firearm, maintaining that alleged suspicion even after they knew this was false and were continuing to hold the Plaintiff.

**FIRST CAUSE OF ACTION—FALSE IMPRISONMENT**

20. Plaintiff incorporates ¶¶ 1-19 as though fully restated.

-4-

21. The legal authority for SLS to detain the Plaintiff is limited to a citizen's arrest for a misdemeanor committed in their presence; an arrest for a felony when a felony has, in fact, been committed, and if there is reasonable cause for believing the arrestee committed the felony, for a suspected cheating crime based on facts giving rise to reasonable suspicion, or for a felony when the SLS has reasonable cause to believe that a felony has been committed.

22. None of the circumstances listed in the preceding paragraph existed for Plaintiff, and the detention of Plaintiff was without legal cause or justification.

23. Further, the detention of the Plaintiff was accompanied by actual use of force.

24. Plaintiff did not consent to being seized and confined and, in fact, repeatedly protested such actions, but nonetheless was seized and confined for a continual period.

25. The actions of SLS, directly and through its employees acting within the course and scope of their employment, constitute the false imprisonment of Plaintiff.

26. Defendants' false imprisonment of Plaintiff caused the damages set forth above in ¶ 17, and were accompanied by fraud, oppression, and malice.

**SECOND CAUSE OF ACTION—ASSAULT AND BATTERY**

27. Plaintiff incorporates ¶¶ 1-26 as though fully restated.

28. In grabbing, tackling, and handcuffing Plaintiff, a battery was committed against Plaintiff by the employees of SLS acting within the course and scope of their employment.

29. Defendants' battery of Plaintiff was accompanied by fraud, oppression, and malice.

30. Defendants' battery of Plaintiff caused the damages set forth above in ¶ 17, and were accompanied by fraud, oppression, and malice.

///

### THIRD CAUSE OF ACTION—DEFAMATION

31. Plaintiffs incorporate ¶¶ 1-30 as though fully restated.

32. SLS, through its employees acting within the scope of their employment, and directly, through the actions of tackling, asportation and physical manucaption by security personnel in a public place published, by pantomime and by words, to all persons seeing and overhearing these activities that the Plaintiff was a criminal.

33. SLS employees also made statements known to them to be false, or in reckless disregard of the truth, impugning Plaintiff and ascribing criminal activity to the Plaintiff in the presence of persons other than the accuser(s).

34. The publication of criminality of the Plaintiff constitutes defamation per se.

35. In holding Plaintiff in a non-public place reserved for criminals and those accused of criminal activity, SLS falsely communicated to third persons that the Plaintiff was a criminal.

36. Defendants' defamatory actions and statements caused the damages set forth above in ¶ 17, and were accompanied by fraud, oppression, and malice.

### FOURTH CAUSE OF ACTION—NEGLIGENCE

37. Plaintiff incorporates ¶¶ 1-46 as though fully restated.

38. Plaintiff is an individual falling under the contemplated protection of the criminal false imprisonment, battery, and assault statutes.

39. The actions described above by SLS are violative of these statutes, or some of them.

40. The violation of these statutes constitute negligence *per se*.

41. Defendants' negligence caused the damages set forth above in ¶ 17, and were accompanied by fraud, oppression, and malice.

WHEREFORE Plaintiff prays that this court enter judgment for Plaintiff, and against Defendants, jointly and severally, in an amount in excess of $15,000.00, the trier of fact deems just and proper inclusive of punitive damages, and together therewith, award Plaintiff costs, interest and attorney's fees so wrongfully incurred in prosecuting this action.

DATED this 10th day of August, 2018.

NERSESIAN & SANKIEWICZ


/s/ Robert A. Nersesian
Robert A. Nersesian, Esq.
Nevada Bar No. 2762
528 South Eighth Street
Las Vegas, Nevada 89101
Attorneys for Plaintiffs

## **JURY DEMAND**

Plaintiff herewith demands trial by jury of all issues so triable in the within case.

Dated this 10th day of August, 2018.

NERSESIAN & SANKIEWICZ


/s/ Robert A. Nersesian
Robert A. Nersesian, Esq.
Nevada Bar No. 2762
528 South Eighth Street
Las Vegas, Nevada 89101
Attorneys for Plaintiff

-7-

# Exhibit 2

# Exhibit 2

Electronically Filed
9/25/2018 3:50 PM
Steven D. Grierson
CLERK OF THE COURT

1   **FAC**
Robert A. Nersesian
2   Bar No:  2762
**NERSESIAN & SANKIEWICZ**
3   528 South Eighth
Las Vegas, Nevada 89101
4   Phone: (702) 385-5454
Fax:  (702) 385-7667
5   Attorney for Plaintiffs

6                          **DISTRICT COURT**

7                     **CLARK COUNTY, NEVADA**

8
Michael Nannis,                          ) Case No.: Case No.: A-18-779248-C
9                                        ) Dept. No.: I
                  Plaintiff,             )
10                                       )
vs.                                      )
11                                       )
SB Gaming, LLC, d/b/a SLS Las Vegas, Las )
12  Vegas Resort Holdings, LLC, and Does I-XX, )        **FIRST AMENDED**
                                         ) **COMPLAINT AND JURY DEMAND**
13                Defendants.            )
14  _____)

15              **FIRST AMENDED COMPLAINT**

16          COMES NOW Plaintiff, by and through his attorney, Robert A. Nersesian of

17  NERSESIAN & SANKIEWICZ and for his causes of action against defendants, allege as

18  follows:

19          **JURISDICTIONAL AND COMMON ALLEGATIONS**

20  1.   The named defendant, SB Gaming, LLC ("SLS") does business in Clark County, Nevada.

21  2.   The named defendant, Las Vegas Resort Holdings, LLC ("Resort"), does business in

22       Clark County, Nevada.

23  3.   The events out of which this matter arises occurred in Clark County, Nevada.

24  4.   SLS is the licensee and owner of a casino on the Las Vegas Strip.

25

26

27      <u>Nersesian & Sankiewicz</u>                                    1

5. It has been represented to Plaintiff's counsel by executives with Resort that Resort is the actual employer of the security personnel undertaking the actions against Plaintiff as described below.  Hereafter, the business where SLS is the licensee and Resort the putative employer will be referred to as "The Casino."

6. On April 1, 2018, Plaintiff was a guest, customer and business invitee at The Casino.

7. Doe defendants are the employees of SLS or Resort acting within the scope of their employment in accomplishing the following described torts committed against the Plaintiff.  They include all persons who in their employment or putative employment with SLS or Resort harmfully or offensively touched the Plaintiff, those individuals who controlled the illegal and tortious detention of the Plaintiff, the employees of SLS or Resort who made and implemented the decision to detain Plaintiff and put Plaintiff out of room at SLS or Resort, and those persons directing or causing the aforesaid actions. Plaintiff is currently unaware of the identities of these individuals.

8. In the morning of April 1, 2018 Plaintiff was playing blackjack at The Casino.

9. While playing blackjack he had some casual social conversation with pit personnel.

10. At no time on April 1, 2018, at The Casino did the Plaintiff represent or allude to anyone, including SLS or Resort personnel:

    a.  That he was armed;

    b.  That he was a threat to SLS or anyone within SLS; or

    c.  That he was a risk of creating a disturbance within SLS.

11. Without warning or cause, and without knowledge, while sitting at the blackjack table at The Casino, three or more security personnel working within the course and scope of their employment with SLS or Resort came up behind Plaintiff, two of them grabbed

Nersesian & Sankiewicz                2

Plaintiff at or about each upper arm and shoulder, and Plaintiff was violently thrown to the floor.

12. Plaintiff was then put upon by the security personnel, and despite no resistance whatsoever, was told to "stop resisting," was physically and aggressively pushed further into the ground and placed in handcuffs.

13. Plaintiff was then frisked on the floor of the casino, determined to not be armed, and thereafter taken physically to an apparent security holding room within SLS.

14. During the initial seizure, the tacklinig, the handcuffing, and asportation to the security office, numerous third party customers of the Casino witnessed the actions of the security personnel against the Plaintiff.

15. As Plaintiff pled for a reason or explanation for this assault, battery, and seizure of him, the only answer he got was the he was to 'shut up.'

16. Upon arrival in the security office the security personnel, through actions as well as words amongst themselves, let it be known that for purposes of the detention, at the time Plaintiff was thrown to the ground, they would claim that they suspected the Plaintiff might be armed.

17. Nothing concerning the Plaintiff's appearance gave any indication that he was armed, and, in fact, his appearance gave every indication that he was not armed.

18. While within the casino and prior to being taken to the security office, the security personnel of The Casino recognized that the Plaintiff was not armed, but continued to hold him in custody regardless.

19. For each of the causes of action stated below, Plaintiff has suffered the following injuries and attendant damages:

    a. Contusions;

Nersesian & Sankiewicz

3

b. Emotional distress;

c. Mental anguish;

d. Humiliation;

e. Loss of reputation;

f. Outrage;

g. Physical distress and pain and suffering as a result of the physical captivity and batteries suffered by him;

h. Physical injuries inclusive of strained muscles;

i. Mortification;

j. Loss of sleep and its attendant discomfort;

k. Mental suffering;

l. A general loss of faith in society, justice, and fellow citizens;

m. Loss of liberty; and

n. Such other damages as the trier of fact determines.

All in an amount in excess of $15,000.00

20. The actions taken by SLS or Resort and their personnel acting within the course and scope of their employment were undertaken with oppression, fraud, and malice, and Plaintiff is entitled to punitive damages under the following causes of action, save for the fourth cause of action.

21. The Casino employees falsely constructed and represented a basis to detain the Plaintiff on the fabricated assertions of Plaintiff being suspected of being in possession of a firearm, maintaining that alleged suspicion and continuing to hold Plaintiff even after they knew this was false.

**FIRST CAUSE OF ACTION—FALSE IMPRISONMENT**

Nersesian & Sankiewicz

4

22. Plaintiff incorporates ¶¶ 1-21 as though fully restated.

23. The legal authority for SLS or Resort, or their personnel to detain the Plaintiff is limited to a citizen's arrest for a misdemeanor committed in their presence; an arrest for a felony when a felony has, in fact, been committed, and if there is reasonable cause for believing the arrestee committed the felony, for a suspected cheating crime based on facts giving rise to reasonable suspicion, or for a felony when the person or entity detaining has reasonable cause to believe that a felony has been committed.

24. None of the circumstances listed in the preceding paragraph existed for Plaintiff, and the detention of Plaintiff was without legal cause or justification.

25. Further, the detention of the Plaintiff was accompanied by actual use of force.

26. Plaintiff did not consent to being seized and confined and, in fact, repeatedly protested such actions, but nonetheless was seized and confined for a continual period.

27. The actions of Defendants, directly and through their employees acting within the course and scope of their employment, constitute the false imprisonment of Plaintiff.

28. Defendants' false imprisonment of Plaintiff caused the damages set forth above in ¶ 19, and were accompanied by fraud, oppression, and malice.

## SECOND CAUSE OF ACTION—ASSAULT AND BATTERY

29. Plaintiff incorporates ¶¶ 1-28 as though fully restated.

30. In grabbing, tackling, and handcuffing Plaintiff, a battery was committed against Plaintiff by the employees of Defendants acting within the course and scope of their employment.

31. Defendants' battery of Plaintiff was accompanied by fraud, oppression, and malice.

32. Defendants' battery of Plaintiff caused the damages set forth above in ¶ 19, and were accompanied by fraud, oppression, and malice.

## THIRD CAUSE OF ACTION—DEFAMATION

Nersesian & Sankiewicz

5

33. Plaintiffs incorporate ¶¶ 1-32 as though fully restated.

34. Defendants through their employees acting within the scope of their employment, and directly, through the actions of tackling, asportation and physical manucaption by security personnel in a public place published, by pantomime, to all persons seeing these activities that the Plaintiff was a criminal.

35. The Casino's employees also made statements known to them to be false, or in reckless disregard of the truth, impugning Plaintiff and ascribing criminal activity to the Plaintiff in the presence of persons other than the accuser(s).

36. The publication of criminality of the Plaintiff constitutes defamation *per se*.

37. In holding Plaintiff in a non-public place reserved for criminals and those accused of criminal activity, SLS falsely communicated to third persons that the Plaintiff was a criminal.

38. Defendants' defamatory actions and statements caused the damages set forth above in ¶ 17, and were accompanied by fraud, oppression, and malice.

**FOURTH CAUSE OF ACTION—NEGLIGENCE**

39. Plaintiff incorporates ¶¶ 1-38 as though fully restated.

40. Plaintiff is an individual falling under the contemplated protection of the criminal false imprisonment, battery, and assault statutes.

41. The actions described above are violative of these statutes, or some of them.

42. The violation of these statutes constitute negligence *per se*.

43. Defendants' negligence caused the damages set forth above in ¶ 19.

**FIFTH CAUSE OF ACTION—IIED**

44. Plaintiff incorporates ¶¶ 1-43 as though fully restated.

Nersesian & Sankiewicz                                                    6

45. The actions of the Defendants' employees as described above, particularly the blindside attack on Plaintiff and the continued detention after knowledge of the lack of a basis to detain, were extreme and outrageous.

46. During the securing of Plaintiff's detention and the detention, Plaintiff suffered severe and extreme emotional distress.

47. In undertaking the activities, Defendants subjected Plaintiff to intentional infliction of emotional distress.

48. These actions by Defendants and their personnel were accompanied by fraud, oppression, and malice, and were undertaken intentionally.

WHEREFORE Plaintiff prays that this court enter judgment for Plaintiff, and against Defendants, jointly and severally, in an amount in excess of $15,000.00, the trier of fact deems just and proper inclusive of punitive damages, and together therewith, award Plaintiff costs, interest and attorney's fees so wrongfully incurred in prosecuting this action.

DATED this 25th day of September, 2018.

NERSESIAN & SANKIEWICZ

/s/ Robert A. Nersesian
Robert A. Nersesian, Esq.
Nevada Bar No. 2762
528 South Eighth Street
Las Vegas, Nevada 89101
Attorneys for Plaintiffs

/ / /

/ / /

/ / /

Nersesian & Sankiewicz

7

**JURY DEMAND**

Plaintiff herewith demands trial by jury of all issues so triable in the within case.

Dated this 25th day of September, 2018.

NERSESIAN & SANKIEWICZ


/s/ Robert A. Nersesian
Robert A. Nersesian, Esq.
Nevada Bar No. 2762
528 South Eighth Street
Las Vegas, Nevada 89101
Attorneys for Plaintiff


**CERTIFICATE OF SERVICE**

I hereby certify that on the 25th day of September, 2018, I served a copy of the foregoing

First Amended Complaint and Jury Demand by depositing the same into the U.S. Mail in Las

Vegas, Nevada, postage prepaid, addressed as follows:

Chris Davis, Esq.
Associate General Counsel
Las Vegas Resorts Holdings, LLC
chris.davis@slslasvegas.com
2535 Las Vegas Boulevard South
Las Vegas, Nevada  89109
Attorneys for Defendant


/s/ Rachel Stein
An employee of Nersesian & Sankiewicz

Nersesian & Sankiewicz                                                          8

# Exhibit 3

# Exhibit 3

1  CHRIS DAVIS, ESQ.
2  Nevada Bar No. 6616
   Associate General Counsel
3  SLS Las Vegas
   chris.davis@slslasvegas.com
4  2535 Las Vegas Boulevard South
   Las Vegas, Nevada 89109
5  Telephone: 702-761-7711
   Facsimile:  702-761-3400
6  *Attorneys for Defendants*

7
                    **DISTRICT COURT**
8                **CLARK COUNTY, NEVADA**

9
10  MICHAEL NANNIS,

11                              Plaintiff,          Case No.:   A-18-779248-C

12          vs.                                     Dept. No.:  I

13  SB GAMMING, LLC, a foreign limited liability    **ANSWER TO FIRST AMENDED**
    company; LAS VEGAS RESORT HOLDINGS,             **COMPLAINT**
14  LLC dba SLS Las Vegas, a foreign limited
    liability company; and DOES I-XX,

15
                              Defendants.
16

17          Defendants LAS VEGAS RESORT HOLDINGS, LLC ("LVRH") and SB GAMING, LLC

18  ("SB Gaming"), by and through its counsel of record, hereby answers Plaintiff MICHAEL NANNIS's

19  First Amended Complaint and Jury Demand (the "Complaint") as follows:

20              <u>**JURISDICTIONAL AND COMMON ALLEGATIONS**</u>

21          1.      Defendants admit the allegations in Paragraphs 1, 2, and 3 of the Complaint.

22          2.      In answering Paragraph 4 of the Complaint, Defendants admit that SB Gaming is the

23  licensee of a casino on the Las Vegas Strip.  Defendants deny each and every other allegation found

24  in Paragraph 4 of the Complaint.

25          3.      In answering Paragraph 5 of the Complaint, Defendants admit that LVRH employs the

26  security personnel at the SLS Las Vegas Hotel & Casino.  Defendant is without sufficient knowledge

27  to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraphs 5 of the

28  Complaint and, therefore, denies the same.

4.      Defendants deny each and every allegation found in Paragraph 6 of the Complaint.

5.      In answering Paragraph 7 of the Complaint, Defendants admit that security personal who came in contact with Plaintiff on April 1, 2018, were working within the course and scope of their employment with LVRH.  Defendants deny each and every other allegation found in Paragraph 7 of the Complaint.

6.      In answering Paragraph 8 of the Complaint, Defendants admit that on April 1, 2018, Plaintiff was playing blackjack at the SLS Las Vegas Hotel & Casino.  Defendants deny the remaining allegations in Paragraph 8 of the Complaint.

7.      Defendants deny each and every allegation found in Paragraphs 9, 10, 10a, 10b, and 10c of the Complaint.

8.      In answering Paragraph 11 of the Complaint, Defendants admit that security personal, while working in the course and scope of their employment for LVRH, restrained Plaintiff due to threats he made.  Defendants deny each and every other allegation found in Paragraph 11 of the Complaint.

9.      Defendants deny each and every allegation found in Paragraph 12 of the Complaint.

10.     In answering Paragraph 13 of the Complaint, Defendants deny that the room where Plaintiff was taken is within SB Gaming or under SB Gaming's control.  Plaintiffs admit the remaining allegations found in Paragraph 13 of the Complaint.

11.     Defendants deny each and every allegation found in Paragraphs 14, 15, 16, 17, 18, 19, 19a, 19b, 19c, 19d, 19e, 19f, 19g, 19h, 19i, 19j, 19k, 19l, 19m, 19n, 20 and 21 of the Complaint.

**First Cause of Action**
(False Imprisonment)

12.     In answering Paragraph 22, Defendants reassert each and every answer to Paragraphs 1 – 21 of the Complaint as though fully set forth herein.

13.     Defendants deny each and every allegation found in Paragraphs 23, 24, 25, 26, 27 and 28 of the Complaint.

**Second Cause of Action**
(Assault and Battery)
.

14.    In answering Paragraph 29, Defendants reassert each and every answer to Paragraphs 1 – 28 of the Complaint as though fully set forth herein

15.    Defendants deny each and every allegation found in Paragraphs 30, 31 and 32 of the Complaint.

**Third Cause of Action**
(Defamation)
.

16.    In answering Paragraph 33, Defendants reassert each and every answer to Paragraphs 1 – 32 of the Complaint as though fully set forth herein

17.    Defendants deny each and every allegation found in Paragraphs 34, 35, 36, 37, and 38 of the Complaint.

**Fourth Cause of Action**
(Negligence)
.

18.    In answering Paragraph 39, Defendants reassert each and every answer to Paragraphs 1 – 38 of the Complaint as though fully set forth herein.

19.    Defendants deny each and every allegation found in Paragraphs 40, 41, 42, and 43 of the Complaint.

**Fifth Cause of Action**
(IIED)
.

20.    In answering Paragraph 44, Defendant reasserts each and every answer to Paragraphs 1 – 43 of the Complaint as though fully set forth herein.

21.    Defendants deny each and every allegation found in Paragraphs 45, 46, 47 and 48 of the Complaint.

22.    Defendants deny that Plaintiff is entitled to judgment as set forth in Plaintiff's prayer for relief.

## **AFFIRMATIVE DEFENSES**

1.     Plaintiff has failed to state claims upon which relief can be granted.

2.     Plaintiff's claims are barred, all or in part, by the doctrine of unclean hands.

3.     Plaintiff's claims are barred, all or in part, because Defendants did not breach any duty owed to Plaintiffs.

4.     Plaintiff's claims are barred, all or in part, because Defendants acted in good faith with respect to the conduct at issue.

5.     Plaintiff's claims are barred, all or in part, by the doctrines of waiver and/or estoppel.

6.     Plaintiff's claims are barred, all or in part, because Plaintiff's damages, if any, were caused by Plaintiff's own conduct.

7.     Plaintiff's claims are barred, all or in part, due to Plaintiff's bad faith.

8.     Plaintiff's claims are barred, all or in part, due to Plaintiff's negligence, recklessness and/or intentional misconduct.

9.     Plaintiff's claims are barred, all or in part, because damages sustained by Plaintiff, if any, were caused by third parties over whom Defendants have no control.

10.     Plaintiff's claims are barred, all or in part, due to Plaintiff's assumption of the risk.

11.     Plaintiff's claims are barred, all or in part, for Plaintiff's failure to mitigate his damages.

12.     Plaintiff's claims are bared, all or in part, because Plaintiff's damages, if any, were the result of an intervening, superseding, and/or supervening cause.

13.     Plaintiff's claims are bared, all or in part, because Plaintiff's damages, if any, are speculative.

14.     Defendants presently have insufficient knowledge or information upon which to form a belief as to whether they may have other, as yet unstated, defenses available.  In the event further investigation or discovery reveals the applicability of any additional defenses, including but not limited to those affirmative defenses identified in Rule 8 of the Nevada Rules of Civil Procedure,

1   Defendants reserve the right to amend this Answer to specifically assert such additional affirmative

2   defenses.

3           Dated this 20th day of November, 2018.

4                                   By:     */s/ Chris Davis*_____

5                                           CHRIS DAVIS, ESQ.
                                            Nevada Bar No. 6616
6                                           Associate General Counsel
                                            SLS Las Vegas
7                                           2535 Las Vegas Boulevard South
                                            Las Vegas, Nevada 89109
8                                           Attorney for Defendants

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on the 20th day of November 2018, a true and correct copy of the foregoing **ANSWER TO FIRST AMENDED COMPLAINT** was served upon the following person via the Court's Electronic Filing system:

> Robert A. Nersesian, Esq.
> Nersesian & Sankiewicz
> 528 South Eighth Street
> Las Vegas, Nevada 89101
> Email: vegaslegal@aol.com
> Attorney for Plaintiff

_/s/ Nina Christy_
Nina Christy, Legal Assistant

# Exhibit 4

# Exhibit 4

Electronically Filed
10/29/2018 1:46 PM
Steven D. Grierson
CLERK OF THE COURT

DISTRICT COURT

CLARK COUNTY, NEVADA

|  |  |
|---|---|
| Michael Nannis,<br><br>                    Plaintiff(s),<br><br>v.<br><br>SB Gaming, LLC, et al.,<br><br>                    Defendant(s). | CASE NO. A-18-779248-C<br>DEPT NO. I |

## **SCHEDULING ORDER**

NATURE OF ACTION: **False imprisonment/ assault & battery**

TIME REQUIRED FOR TRIAL: **6 days**

TRIAL READY DATE: **1/27/20**

DATES FOR SETTLEMENT CONFERENCE: **None requested**

  Counsel representing all parties and after consideration by the Discovery Commissioner,

  IT IS HEREBY ORDERED:

  1. all parties shall complete discovery on or before **10/24/19.**

  2. all parties shall file motions to amend pleadings or add parties on or before **7/26/19**.

  3. all parties shall make initial expert disclosures pursuant to N.R.C.P. 16.1(a)(2) on or before **7/26/19**.

  4. all parties shall make rebuttal expert disclosures pursuant to N.R.C.P. 16.1(a)(2) on or before **8/23/19.**

  5. all parties shall file dispositive motions on or before **11/21/19.**

  Certain dates from your case conference report(s) may have been changed to bring them into compliance with N.R.C.P. 16.1.

**DISCOVERY
COMMISSIONER**
EIGHTH JUDICIAL
DISTRICT COURT

Within 60 days from the date of this Scheduling Order, the Court shall notify counsel for the parties as to the date of trial, as well as any further pretrial requirements in addition to those set forth above.

Unless otherwise directed by the court, all pretrial disclosures pursuant to N.R.C.P. 16.1(a)(3) must be made at least 30 days before trial.

Motions for extensions of discovery shall be made to the Discovery Commissioner in strict accordance with E.D.C.R. 2.35. Discovery is completed on the day responses are due or the day a deposition begins.

Unless otherwise ordered, all discovery disputes (except disputes presented at a pre-trial conference or at trial) must first be heard by the Discovery Commissioner.

Date: October 25, 2018

_____
DISCOVERY COMMISSIONER

## CERTIFICATE OF SERVICE

I hereby certify that on the date filed, a copy of the foregoing Scheduling Order was electronically served, pursuant to N.E.F.C.R. Rule 9, to all registered parties in the Eighth Judicial District Court Electronic Filing Program.

*If indicated below*, a copy of the foregoing Scheduling Order was also:

☐ Mailed by United States Postal Service, Postage prepaid, to the proper parties listed below at their last known address(es) :

_____
COMMISSIONER DESIGNEE

**DISCOVERY**
**COMMISSIONER**
EIGHTH JUDICIAL
DISTRICT COURT

# Exhibit 5

# Exhibit 5

Electronically Filed
1/18/2019 9:33 AM
Steven D. Grierson
CLERK OF THE COURT

1   MCOM
    Robert A. Nersesian
2   Bar No: 2762
    **NERSESIAN & SANKIEWICZ**
3   528 South Eighth
    Las Vegas, Nevada 89101
4   Phone: (702) 385-5454
    Fax: (702) 385-7667
5   Email:vegaslegal@aol.com
    Attorney for Plaintiff
6

7                          **DISTRICT COURT**

8                      **CLARK COUNTY, NEVADA**

9   Michael Nannis,                          ) Case No.: Case No.: A-18-779248-C
                                             ) Dept. No.: I
10                        Plaintiff,          )
                                             )
11  vs.                                      )
                                             )
12  SB Gaming, LLC, d/b/a SLS Las Vegas, Las )
    Vegas Resort Holdings, LLC, and Does I-XX, )   **DISCOVERY COMMISSIONER**
13                                           )
                                             )
14                        Defendants.         )
    ─────────────────────────────────────────)
15

16         **MOTION COMPELLING DISCLOSURE OF VIDEO EVIDENCE**

17          NOW COMES Plaintiff, and herewith moves pursuant to NRCP 37, that this Court enter

18  its order compelling the Defendants to produce all video or other media in their possession or

19  control including all camera angles and audio recordings , concerning or capturing any portion of

20  the events of April 1, 2018 involving Plaintiff, or capturing Plaintiff in any capacity. This motion

21  is based on the pleadings and papers on file to date, the attachments hereto, if any, the following

22  Memorandum of Points and Authorities, and any oral argument the Court deems pertinent.

23  / / /

24  / / /

25  / / /

## NOTICE OF MOTION

PLEASE TAKE NOTICE that the foregoing Motion to Compel Discovery will be heard before the Discovery Commissioner on the **22** day of _____**February**_____, 2019, at **9:00 am** a.m./p.m. or as soon thereafter as counsel may be heard.

NERSESIAN & SANKIEWICZ

DATED this 18th day of January, 2019.

**NERSESIAN & SANKIEWICZ**

_/S/ Robert A. Nersesian_
Robert A. Nersesian
Nev. Bar # 2762
528 S. 8th St.
Las Vegas, NV  89101
Phone: 702.385.5454
Fax: 702.385.7667
Email: vegaslegal@aol.com
Attorneys for Plaintiff

## CERTIFICATE/DECLARATION OF ATTORNEY

On January 17, 2019, the undersigned did confer with Defendants' attorney regarding the production of recordings of the Plaintiff in the possession or control of the Defendants. To that point, Defendants were conditioning providing the admittedly extant evidence on a protective order.

The purpose of the Plaintiff's call was to conduct a conversation pursuant to EDCR 2.34, and to attempt to acquire the requested information without executing a protective order. Defendants' counsel, Mr. Davis, informed the undersigned that the media requested would not be provided without a protective order. Plaintiff's counsel explained that this was unacceptable. When Plaintiff asked the basis under which a protective order was warranted, Defendants' counsel's response was that the providing of the video would publicly disclose the response

-2-

tactics of the Defendants when faced with a belief that a guest was armed and a threat, and also disclose the camera angles of some of the Defendants' video surveillance apparatus. Plaintiff's counsel responded that the limited cameras disclosed in light of the hundreds (a guess) of cameras in Defendants' casino would not have an effect warranting a protective order. As to tactics, Defendants security approached Plaintiff and physically took him into custody at a blackjack table. In this respect, there would not be any disclosure of any "tactics" of public import requiring protection. The good faith attempt to acquire the items as Plaintiff believes are required under the Nevada discovery rules without a protective order were unsuccessful and the parties were unable to reach an accord regarding the production.

Declared under penalty of perjury, this 18th day of January, 2019.

**NERSESIAN & SANKIEWICZ**

*/S/ Robert A. Nersesian*
Robert A. Nersesian
Nev. Bar # 2762
528 S. 8th St.
Las Vegas, NV  89101
Phone: 702.385.5454
Fax: 702.385.7667
Email: vegaslegal@aol.com
Attorneys for Plaintiff

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND BACKGROUND

This is a civil case involving an alleged false imprisonment and battery upon a patron of the Defendants' casino. The undisputed facts are that the Plaintiff gambled at the Defendant's casino. While at a blackjack table, Plaintiff was approached by numerous security personnel of the Defendants who went hands-on with the Plaintiff, secured him, handcuffed him, and asportated him to a security office. Plaintiff was unarmed throughout this encounter.

Facts in dispute include a position by the Defendants that the Plaintiff made an aggressive move towards the security personnel before he was attacked. Defendants also claim that they had evidence that the Plaintiff was armed. The video will, obviously, address many of these concerns.

Plaintiffs have also confirmed with counsel for the Defendants that video of the seizure of the Plaintiff and video of the detention of the Plaintiff exists. Obviously, Plaintiff cannot prosecute his case without such video, but it has not been provided despite an express request for production of this video under NRCP 34. Requests for Production, Exhibit 1, ¶ 2.

As an aside, in the request for production the Plaintiff did offer up a protective order with respect to a "plot" of all camera locations within the Defendants' casino. Exhibit 1, ¶ 21. In the conference referenced above, Plaintiff requested Defendants' counsel provide a protective order within the scope of this single response as limited by the offer in order that the document could be produced while the balance of the dispute was addressed by the Discovery Commissioner. Defendants refused, stating that that, too, would not be produced, no protective order would be forwarded pending resolution of this dispute concerning production of the media not included within Plaintiff's proffer of a protective order, and Defendants' would not piecemeal out the

discovery pending resolution of the broader question. That is, Defendants would not even provide the information requested in exhibit 1, ¶ 21, despite Plaintiff's agreement to a protective order on this single item.

     In way of background, Plaintiff's counsel has brought over 100 similar cases against casinos since 1995. A majority of such cases have video produced, and Plaintiff's counsel has a file drawer filled with such surveillance not subject to any protective order. Over this course, to the undersigned's recollection, merely three of the surveillance videos have been addressed by any media or public sources, and Plaintiff's counsel religiously follows Nev. Rules of Prof'l Conduct 3.6(a). Of those which have become public, one was used in a joint presentation at G2E[1] by the casino's attorney and the undersigned to the industry in order to train security personnel in how **not** to handle a seizure of a patron.  Another was through a Las Vegas Sun reporter discovering a multiple six figure verdict against the casino, and acquiring the videos from the court post-trial. Note that on the paper's request to set aside a protective order, that would likely be the result here as well should the Plaintiff achieve a newsworthy verdict. The last one was a disclosure directed by the client without comment by the attorney. Any claim of negative publicity, even though this is not an excuse for a protective order, is belied by the verifiable history of video historically produced to Plaintiff's counsel in discovery, and such a premise by Defendants would be an unsupported and unsupportable conclusion contrary to the facts.

/ / /

/ / /

/ / /

## III. ANALYSIS

## A. THE STANDARD

As the Commissioner addresses the following, the only excuse from complying with discovery requirements is a protective order or a valid objection to the items sought in discovery. There has been no protective order in this case, but the Defendants' attorney has requested a broad protective order which includes all video.

Under NRCP 26(c), two prerequisites permeate the ability to receive such an order, to wit: 1) There must be "good cause," and 2) The order should only be entered "as justice requires." Although there is a paucity of authority in Nevada as to what constitutes "good cause" for the issuance of a protective order, there exists a broad swath of authority under the Federal Rules of Civil Procedure upon which the Nevada Rules of Civil Procedure are patterned. Relative to pre-hearing disclosures and discovery, Nevada courts will seek to be consistent with federal authority. See Means v. State, 120 Nev. 1001, 1012, 103 P.3d 25, 33, (2004). Further, federal authority addressing analogous rules of civil procedure are ordinarily followed. See Watson Rounds, P.C. v. Eighth Judicial Dist. Court, 358 P.3d 228, 232 (Nev. 2015); Foster v. Dingwall, 228 P.3d 453, 456 (Nev. 2010) ("To resolve this issue, we look to federal case law, as this court has recognized that 'federal decisions involving the Federal Rules of Civil Procedure provide persuasive authority when this court examines its rules.'"), and see Casino Operations v. Graham, 86 Nev. 764, 767 (1970), Union Paving Co. v. Teglia, 70 Nev. 494, 495 (1954). Considering the foregoing, the body of case law below provides a clear indication that the Defendant's holds no meaningful basis warranting the issuance of a protective order.

---

[1] This is the world's largest conference and trade show within the industry, and it is annually

While the Defendants have not filed a motion for protective order, considering the conference reference above, it is expected that that will provide their defense to the current motion. The evaluation of the requirement that items be produced sans protective order is found at NRCP 26, providing in relevant part:  On a showing of "good cause," an order may be entered to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: * * * (7) that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a certain way; * * *. NRCP 26(c). Defendants cannot meet the tests with regard to the surveillance video they have not provided.

## A. NATURE OF THE ITEMS (RECORDINGS) AT ISSUE

Looking to the video/audio items that exist, extrapolation from experience indicates that the videos will show:

1. Plaintiff attacked while partaking of the games offered by Defendants;

2. Plaintiff taken to the ground and handcuffed;

3. Plaintiff invasively and violently searched;

4. Incredulity by the attacking security personnel at not finding a gun on the Plaintiff;

5. Plaintiff being physically escorted by security personnel; and

6. Plaintiff being held for a lengthy and accusative period in Defendants' security office.

So far as the events depicted on the video are concerned, they are absolutely true, and not subject to contrary claims. Video cannot be contradicted and is conclusive as to the facts shown. People for the Ethical Treatment of Animals v. Bobby Berosini, Ltd., 111 Nev. 615, 621 (1995), In re Bailey, No. 2006-386, 2008 WL 2793848, at *2 (Vt. Apr. 2008)(An authenticated video showing

held at the Las Vegas Convention Center.

unambiguous events would constitute "conclusive direct evidence" of the events portrayed); Lee v. City of Norwalk, Ohio, No. 3:11 CV 897, 2012 WL 3778975, at *2 (N.D. Ohio Aug. 30, 2012) aff'd, 529 F. App'x 778 (6th Cir. 2013) (authenticated video properly controls over conflicting statements.); Stevens v. Mkt. Basket Stores, Inc., 176 So. 3d 1065, 1070 (La. App. 2015); accord Scott v. Harris, 550 U.S. 372, 380 (2007); Griffin v. Hardrick, 604 F.3d 949, 955 (6th Cir. 2010); State v. Smith, No. 05-11-00742-CR, 2012 WL 1059703, at *4 (Tex. App. Mar. 30, 2012)(video evidence established the facts over contrary testimony); Hall v. State, 829 S.W.2d 407, 408 (Tex. App. 1992). Thus, anything Defendants attempt to argue is, by definition, an argument to keep indisputable and established facts in the dark and outside the ordinary processes of litigation being in a public forum and open to the public.

Moreover, some of these recordings are absolutely required to be made and kept pursuant to Nevada's Gaming Regulations. For example, the ability to record table games play, the security office in which Plaintiff was held, the area of the table games gaming floor with sufficient particularity to identify individuals, and the casino cage are mandated by Nev. Gaming Control Bd. Reg. SURVEILLANCE STANDARDS FOR NONRESTRICTED LICENSEES, Standard 2, Standard 6, and Standard 8. In this sense, the idea that Plaintiff gaming at a blackjack table or being held in the security office are already known, as a requirement of the law, by the public to be existing with camera placement sufficient to record such events. Simply, as the recordings are mandated by law applying to the hundreds of licensees in Nevada, there is obviously no proprietary or trade secret concern regarding the videos falling into the above-referenced categories. Anyone accessing the Nevada Gaming Control Board Regulations already know where there are cameras. They are located in order to cover the areas referenced, and the idea that showing video from such mandated cameras discloses the placement of the cameras is an irrelevancy.

From an additional perspective, the nature of the recordings also shows why the idea of disclosure of camera positions is, in a word, garbage. Citing the location of the cameras as the rationale for claiming trade secret, if Defendants argue the concern for dead spots being revealed, is a straw-man. This is a specious concern as disclosing videos from cameras that actually filmed events would not disclose any cameras which are dummies, and would only disclose where coverage exists, not where it does not exist.

## B. LACK OF GOOD CAUSE

As noted in the standard for a protective order stated above, good cause is a prerequisite to the issuance of a protective order. In evaluating good cause, the analysis requires "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." Morrow v. City of Tenaha Deputy City Marshal Barry Wash., 2010 U.S. Dist. LEXIS 106541, *9, 77 Fed. R. Serv. 3d (Callaghan) 966 (E.D. Tex. 2010);  Wheeler v. Fiesta Palms, LLC, 2007 U.S. Dist. LEXIS 103438 (D. Nev. 2007); In re Terra Int'l, 134 F.3d 302, 306 (5th Cir. 1998); Barker ex rel. NLRB, 2010 U.S. Dist. LEXIS 124038, *10, 190 L.R.R.M. 2179, 160 Lab. Cas. (CCH) P10,324 (N.D. Ind. 2010). Defendant cannot make such a showing.

There is no trade secret or privacy concern here. Considering the cameras viewing the play on the table games, the directives within the Nev. Gaming Control Bd. Reg. SURVEILLANCE STANDARDS FOR NONRESTRICTED LICENSEES, is so particular that a camera directly overhead of each table game is mandatory. The location of the camera in the security office is likewise public knowledge considering the law's requirements. The same with the cage. Certainly, there is no trade secret involved in these mandated cameras with mandated positions.

```
PCL XL Error
        Subsystem:              I/O
        Error:                  InputReadError
        Operator:               Text
        Position:               3434
```

# EXHIBIT 1

# EXHIBIT 1

ELECTRONICALLY SERVED
12/31/2018 5:41 PM

CHRIS DAVIS, ESQ.
Nevada Bar No. 6616
Associate General Counsel
SLS Las Vegas
chris.davis@slslasvegas.com
2535 Las Vegas Boulevard South
Las Vegas, Nevada 89109
Telephone: 702-761-7711
Facsimile: +702-761-3400
*Attorneys for Defendants*

**DISTRICT COURT**
**CLARK COUNTY, NEVADA**

|  |  |
|---|---|
| MICHAEL NANNIS,<br><br>Plaintiff,<br><br>vs.<br><br>SB GAMING, LLC, a foreign limited liability company; LAS VEGAS RESORT HOLDINGS, LLC dba SLS Las Vegas, a foreign limited liability company; and DOES I-XX,<br><br>Defendants. | Case No.:   A-18-779248-C<br><br>Dept. No.:   I<br><br>**DEFENDANT LAS VEGAS RESORT HOLDINGS' RESPONSE TO PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS** |

Defendants LAS VEGAS RESORT HOLDINGS, LLC d/b/a, SLS LAS VEGAS, by and through its counsel of record, pursuant to Nev. R, Civ. P. 34, hereby responds to Plaintiff's Request for Production of Documents as follows:

**GENERAL STATEMENT**

The following Responses are based upon information and documents presently available to and known by Defendant, based upon presently available and known facts. It is anticipated that further discovery investigation, legal research and analysis will reveal additional facts, add meaning to known facts, and establish entirely new factual conclusions or legal contentions, all of which may lead to additions to, changes in and variations from these responses.

**DEFINITIONS OF SPECIFIC OBJECTIONS**

As used in the specific responses below, the following terms include objections based upon their respective definitions:

Page 1 of 11

A.     "Vague and Ambiguous" is defined to mean: Defendant objects on the basis that the Request is vague, uncertain, and ambiguous.

B.     "Overbroad" is defined to mean: Defendant objects on the basis that the Request is over broad and calls for an expansive potential breadth of information that is unreasonable in scope and parameter.

C.     "Irrelevant" is defined to mean: Defendant objects on the basis that the Request requests information irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence.

D.     "Burdensome" is defined to mean: Defendant objects on the basis that the Request is so broad and uncertain that it creates an unreasonable and undue burden. "Burdensome" is also defined to mean that Defendant objects to the Request because the information sought is more readily available through some other, more convenient, less burdensome, and less expensive source or discovery procedure. See Role 26(b)(1) of the Nevada Rules of Civil Procedure.

E.     "Privileged" is defined to mean: Defendant object on the basis that the Request calls for information that is (1) protected by the work product doctrine: (2) protected by the attorney-client privilege; (3) protected because it consists, in whole or in part, of trial preparation materials and/or documents containing  mental impressions, conclusions, opinions, or legal theories of counsel; (4) otherwise protected under Rule 26(b) of the Nevada Rules of Civil Procedure; and/or (5) protected under any other valid privilege.

F.     "Repetitious" is defined to mean: Defendants object on the basis that the answer to the Request has already been given after similar questions were answered in previous in Interrogatories or another format through this proceeding.

G.     The phase "Without waiving the foregoing objections," or words having similar effect, is defined to mean: While Defendants will produce information in response to the Request, the information sought by the Request that is covered by either a specific or general objection will not be produced.

## RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**

All written statements and/or reports of employees of Defendant, not previously produced, made internally or externally to any entity concerning the event of April 1, 2018 involving Plaintiff.

**RESPONSE TO REQUEST NO. 1:**

Defendant objects to this request to the extent that it seeks information protected by the attorney-client privilege or the work-product doctrine. Subject to and without waiving the foregoing objections, Defendant responds as follows: *See* SLS147 – SLS187.

**REQUEST NO. 2:**

All videotapes or other media, including all camera angles and audio recordings, concerning or capturing any portion of the events of April 1, 2018 involving Plaintiff, or capturing Plaintiff in any capacity.

**RESPONSE TO REQUEST NO. 2:**

Defendant objects to this request as it calls for the production of documents and information that may contain confidential, proprietary, and/or trade secret information. Defendant will provide an appropriately tailored response to this request upon the execution of a mutually agreeable confidentiality agreement and protective order.

**REQUEST NO. 3:**

The daily shift reports or logs of Defendants' Surveillance Department for April 1, 2018.

**RESPONSE TO REQUEST NO. 3:**

Defendant objects to this request on grounds that it is overbroad in time and scope, is unduly burdensome, and is irrelevant and not calculated to lead to admissible evidence. Defendant further objects to this request as it calls for the production of documents and information that may contain confidential, proprietary, and/or trade secret information. Defendant will provide an appropriately tailored response to this request upon the execution of a mutually agreeable confidentiality agreement and protective order.

**REQUEST NO. 4:**

The daily shift reports or logs of Defendants' Security Department for March 31- April 2, 2018.

**RESPONSE TO REQUEST NO. 4:**

Defendant objects to this request on grounds that it is overbroad in time and scope, is unduly burdensome, and is irrelevant and not calculated to lead to admissible evidence.  Defendant further objects to this request as it calls for the production of documents and information that may contain confidential, proprietary, and/or trade secret information.   Subject to and without waiving the foregoing objections, Defendant responds as follows:  *See* SLS147 – SLS180.

**REQUEST NO. 5:**

Any photographs of Plaintiff in possession of Defendant or any of its employees that were taken on April 1, 2018.

**RESPONSE TO REQUEST NO. 5:**

Defendant objects to this request on grounds that it is overbroad in time and scope, is unduly burdensome, and is irrelevant and not calculated to lead to admissible evidence.  Defendant further objects to this request as it calls for the production of documents and information that may contain confidential, proprietary, and/or trade secret information.   Subject to and without waiving the foregoing objections, Defendant responds as follows:  *See* SLS154, SLS155, SLS159.

**REQUEST NO. 6:**

Any security manual used by Defendant on April 1, 2018.

**RESPONSE TO REQUEST NO. 6:**

Defendant objects to this request on grounds that it is overbroad in time and scope, is unduly burdensome, and is irrelevant and not calculated to lead to admissible evidence.  Defendant further objects to this request as it calls for the production of documents and information that may contain confidential, proprietary, and/or trade secret information.  Defendant will provide an appropriately tailored response to this request upon the execution of a mutually agreeable confidentiality agreement and protective order.

**REQUEST NO. 7:**

All written policies and procedures in effect at Defendant on April 1, 2018, relative to the following:

a. The trespassing of patrons from the casino.

b. Underage gambling.

c. The requirement of patrons producing identification on demand.

d. The use of restraints.

e. Advantage players.

f. Gaming disputes over $500.

g. Contacting Nevada Gaming Control Board.

h. Use of force on an invitee, guest, licensee or trespasser.

i. Possession of firearms on the property of Defendants' casino.

j. Training regarding detentions.

k. Training regarding citizen's arrests.

l. Detention of patrons, guests, licensees, invitees, or trespassers.

m. Citizen's arrests for felonies or suspected felonies.

n. Citizen's arrests for misdemeanors or suspected misdemeanors.

o. House rules concerning detentions, suspicion, blackjack, table games, and

patron cooperation.

**RESPONSE TO REQUEST NO. 7:**

Defendant objects to this request on grounds that it is overbroad in time and scope, is unduly burdensome, and is irrelevant and not calculated to lead to admissible evidence.  Defendant further objects to this request as it calls for the production of documents and information that may contain confidential, proprietary, and/or trade secret information.  Defendant will provide an appropriately tailored response to this request upon the execution of a mutually agreeable confidentiality agreement and protective order.

**REQUEST NO. 8:**

Any trespass file or trespass records maintained (or at any time created) by Defendant that concern Plaintiff.

**RESPONSE TO REQUEST NO. 8:**

Defendant objects to this request on grounds that it is overbroad in time and scope, is unduly burdensome, and is irrelevant and not calculated to lead to admissible evidence. Subject to and without waiving the foregoing objections, Defendant responds as follows: *See* SLS167, SLS170.

**REQUEST NO. 9:**

Any reports, memoranda, statements of employees or notes that Defendant provided to any entity (including, but not limited to, Las Vegas Metropolitan Police Department, Nevada Gaming Control Board, Biometrica, Red Hand (f/k/a OSN or Oregon Surveillance Network), or Griffin Investigations) concerning Plaintiff.

**RESPONSE TO REQUEST NO. 9:**

Defendant objects to this request on grounds that it is overbroad in time and scope, is unduly burdensome, and is irrelevant and not calculated to lead to admissible evidence. Defendant further objects to this request as it calls for the production of documents and information that may contain confidential, proprietary, and/or trade secret information. Subject to and without waiving the foregoing objections, Defendant responds as follows: *See* SLS147 – SLS180, SLS187.

**REQUEST NO. 10:**

All documents accessible to Defendant by subscription or otherwise (and thus, within their control) concerning Plaintiff in the Griffin Book, Griffin Gold, the Red Hand database, the Biometrica database, or the i-track or other database maintained or related to Defendants and shared among one or more of Defendants' properties or related properties, or any other databases accessible by Defendant concerning gamblers, guests, or patrons.

**RESPONSE TO REQUEST NO. 10:**

Defendant objects to this request on grounds that it is overbroad in time and scope, is unduly burdensome, and is irrelevant and not calculated to lead to admissible evidence. Defendant further objects to this request as it calls for the production of documents and information that may contain confidential, proprietary, and/or trade secret information. Subject to and without waiving the foregoing objections, Defendant responds as follows: *See* SLS147 – SLS187.

**REQUEST NO. 11:**

Any notebooks utilized by any security officer or employee of Defendants who interacted with Plaintiff in the course of his (her) employment on April 1, 2018.

**RESPONSE TO REQUEST NO. 11:**

Defendant objects to this request on grounds that it is overbroad in time and scope, is unduly burdensome, and is irrelevant and not calculated to lead to admissible evidence. Defendant further objects to this request as it calls for the production of documents and information that may contain confidential, proprietary, and/or trade secret information. Subject to and without waiving the foregoing objections, Defendant responds as follows: *See* SLS160 – SLS164.

**REQUEST NO. 12:**

Any handwritten notes of employees of Defendant concerning the events of April 1, 2018, involving Plaintiff.

**RESPONSE TO REQUEST NO. 12:**

Defendant objects to this request to the extent that it seeks information protected by the attorney-client privilege or the work-product doctrine. Subject to and without waiving the foregoing objections, Defendant responds as follows: *See* SLS160 – SLS164, SLS170.

**REQUEST NO. 13:**

The plot plan or floor plan of the property located at 3600 S. Las Vegas Blvd., Las Vegas, Nevada.

**RESPONSE TO REQUEST NO. 13**

Defendant objects to this request on grounds that it is overbroad in time and scope, is unduly burdensome, and is irrelevant and not calculated to lead to admissible evidence. Defendant further objects to this request as it calls for the production of documents and information that contain confidential, proprietary, and/or trade secret information.

**REQUEST NO. 14:**

Any logs of contacts with Nevada Gaming Control Board on April 1, 2018.

**RESPONSE TO REQUEST NO. 14:**

Defendant objects to this request on grounds that it is overbroad in time and scope, is unduly burdensome, and is irrelevant and not calculated to lead to admissible evidence. Defendant further objects to this request as it calls for the production of documents and information that contain confidential, proprietary, and/or trade secret information.

**REQUEST NO. 15:**

Any logs of contacts with Las Vegas Metropolitan Police Department on April 1, 2018.

**RESPONSE TO REQUEST NO. 15:**

Defendant objects to this request on grounds that it is overbroad in time and scope, is unduly burdensome, and is irrelevant and not calculated to lead to admissible evidence. Defendant further objects to this request as it calls for the production of documents and information that may contain confidential, proprietary, and/or trade secret information. Subject to and without waiving the foregoing objections, Defendant responds as follows: *See* SLS147 – SLS152, SLS167, SLS170, SLS174 – SLS180, SLS186.

**REQUEST NO. 16**

Any survey or review of Plaintiff's gambling at Defendants' casino at any time.

**RESPONSE TO REQUEST NO. 16:**

Defendant objects to this request on grounds that it is overbroad in time and scope, is unduly burdensome, and is irrelevant and not calculated to lead to admissible evidence. Subject to and without waiving the foregoing objections, Defendant responds as follows: *See* SLS185, SLS187.

**REQUEST NO. 17:**

All financial statements of Defendants, audited and unaudited, for each of the fiscal years ended 2016 through the date of the trial of this matter.

**RESPONSE TO REQUEST NO. 17:**

Defendant objects to this request on grounds that it is overbroad in time and scope, is unduly burdensome, and is irrelevant and not calculated to lead to admissible evidence. Defendant further objects to this request as it calls for the production of documents and information that contain confidential, proprietary, and/or trade secret information.

**REQUEST NO. 18:**

A copy of Defendants' federal tax return for each of the tax years ended 2016 through the date of the trial of this matter.

**RESPONSE TO REQUEST NO. 18:**

Defendant objects to this request on grounds that it is overbroad in time and scope, is unduly burdensome, and is irrelevant and not calculated to lead to admissible evidence.  Defendant further objects to this request as it calls for the production of documents and information that contain confidential, proprietary, and/or trade secret information.

**REQUEST NO. 19:**

Any financial reports of Defendant provided to the Nevada Gaming Control Board from 2016 through the date of the trial of this matter.

**RESPONSE TO REQUEST NO. 19:**

Defendant objects to this request on grounds that it is overbroad in time and scope, is unduly burdensome, and is irrelevant and not calculated to lead to admissible evidence.  Defendant further objects to this request as it calls for the production of documents and information that contain confidential, proprietary, and/or trade secret information.

**REQUEST NO. 20:**

Any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment and any disclaimer or limitation of coverage or reservation of rights under any such insurance agreement.

**RESPONSE TO REQUEST NO. 20:**

*See* Plaintiffs' Initial Disclosures, SLS1 – SLS146.

**REQUEST NO. 21:**

Any plot of camera locations within Defendants' casino including those which designate the type of camera (e.g., PTZ, fixed, etc.). Plaintiff will execute a protective order if presented prior to the production of the information in this request.

1  **RESPONSE TO REQUEST NO. 21:**

2        Defendant objects to this request on grounds that it is overbroad in time and scope, is unduly

3  burdensome, and is irrelevant and not calculated to lead to admissible evidence.  Defendant further

4  objects to this request as it calls for the production of documents and information that contain

5  confidential, proprietary, and/or trade secret information.

6  **REQUEST NO. 22:**

7        Any employment file of any employee of Defendant who, at any time, placed hands upon the

8  Plaintiff on April 1, 2018.

9  **RESPONSE TO REQUEST NO. 22:**

10        Defendant objects to this request on grounds that it is overbroad in time and scope, is unduly

11  burdensome, and is irrelevant and not calculated to lead to admissible evidence.  Defendant further

12  objects to this request as it calls for the production of documents and information that contain

13  confidential, proprietary, and/or trade secret information.  Defendant will provide an appropriately

14  tailored response to this request upon the execution of a mutually agreeable confidentiality agreement

15  and protective order.

16        Dated this 31st day of December 2018.

17                    **CHRIS DAVIS, ESQ.**

18

19            By:     */s/ Chris Davis*

20                    CHRIS DAVIS, ESQ.
                    Nevada Bar No. 6616

21                    Associate General Counsel
                    SLS Las Vegas

22                    2535 Las Vegas Boulevard South
                    Las Vegas, Nevada 89109

23                    Attorney for Defendants

24

25

26

27

28

## CERTIFICATE OF SERVICE

The undersigned certifies that, on the 31st day of December 2018, a true and correct copy of the foregoing **DEFENDANT LAS VEGAS RESORT HOLDINGS' RESPONSE TO PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS** was served upon the following person via the Court's Electronic Filing system:

> Robert A. Nersesian, Esq.
> Nersesian & Sankiewicz
> 528 South Eighth Street
> Las Vegas, Nevada 89101
> Email: vegaslegal@aol.com
> Attorney for Plaintiff

*/s/ Chris Davis*, Esq.

Page 11 of 11

# Exhibit 6

# Exhibit 6

1    CHRIS DAVIS, ESQ.
     Nevada Bar No. 6616
2    Associate General Counsel
     SLS Las Vegas
3    chris.davis@slslasvegas.com
     2535 Las Vegas Boulevard South
4    Las Vegas, Nevada 89109
     Telephone: 702-761-7711
5    Facsimile:  +702-761-3400
     *Attorneys for Defendants*
6

7
                        **DISTRICT COURT**
8                  **CLARK COUNTY, NEVADA**

9    MICHAEL NANNIS,
                                              Case No.:    A-18-779248-C
10                              Plaintiff,
            vs.                               Dept. No.:   I
11
     SB GAMING, LLC, a foreign limited liability    **DEFENDANT LAS VEGAS RESORT**
12   company; LAS VEGAS RESORT HOLDINGS,            **HOLDINGS' OPPOSITION TO MOTION**
     LLC dba SLS Las Vegas, a foreign limited       **TO COMPEL AND COUNTERMOTION**
13   liability company; and DOES I-XX,              **FOR PROTECTIVE ORDER**

14                              Defendants.

15

16           Defendant LAS VEGAS RESORT HOLDINGS, LLC ("LVRH"), by and through its counsel

17   of record, pursuant to Nev. R. Civ. P 26, 34 and 37, opposed Plaintiff's Motion compelling disclosure

18   of video evidence and moves for a protective order, and for an award of its attorney fees and expenses

19   in bringing this countermotion.

20           This opposition and countermotion is made and based upon pleadings and other papers on file,

21   the attached Memorandum of Points and Authorities, Exhibits, attached hereto, as well as the

22   arguments and evidence presented at any hearing convened to consider these motions.

23           Dated this  7th day of February 2019

24                                      **CHRIS DAVIS, ESQ.**

25                          By:    */s/ Chris Davis* _____ _
                                   CHRIS DAVIS, ESQ.
26                                 Nevada Bar No. 6616
                                   Associate General Counsel SLS Las Vegas
27                                 Attorney for Defendants

28
                                      Page 1 of 10

## POINTS AND AUTHORITIES

### I. INTRODUCTION

This action revolves Defendant Las Vegas Resort Holdings, LLC ("LVRH") decision to detain Plaintiff Michael Nannis after he threatened that he could "blow you guys up in a second" when playing table games at the SLS Hotel & Casino ("SLS'), operated by LVRH.  Plaintiff now wishes to further threaten the security of the SLS by demanding disclosure of surveillance videos of the incident without agreeing to a protective order preventing the unauthorized disclosure of these videos.  These videos, however, are highly confidential as they disclose camera locations and angels, which if revealed could be used to avoid SLS security.  These videos also reveal security tactics employed by LVRH when confronting security threats.  This confidential information is precisely the information that Nev. R. Civ. P. 26(c) was designed to protect.

Counsel for Plaintiff was afforded multiple opportunity to view these videos without a protective order, but failed to do so.  LVRH, however, has declined to provide a copy of these videos without a protective order because to do so would threaten the security of its employees and guests the SLS.  While Plaintiff attempts to make light of the risks, LVRH cannot afford to do so.  In the world of YouTube, without a protective order, LVRH's security videos could fall into the hands of third-parties seeking to find holes in LVRH's security systems and tactics.  Courts have repeatedly held that such safety concerns represent the "good cause" necessary to enter a protective order.

This Court should therefore deny Plaintiff's motion to compel and grant LVRH's motion for a protective order in a form similar to that found attached to Exhibit A.

### II. DECLARATION OF CHRIS DAVIS, ESQ.

I, Chris Davis, declare under penalty of perjury that the following is true and correct of my own personal knowledge and if called to testify in this matter would testify as follows:

1.  I am attorney representing the Defendant Las Vegas Resort Holdings, LLC ("LVRH").

2.  After Plaintiffs served their initial complaint in the above entitled matter, I contacted counsel for Plaintiff, Robert Nersesian, Esq., to request that he amend Plaintiff's complaint to name LVRH, instead of SB Gaming, LLC, because LVRH, not SB Gaming, employed the security personnel referenced in the complaint.  I also informed Mr. Nersesian that LVRH had surveillance videos of the

incident, and offered to arrange a time when he could view the video even prior to any amendment of the complaint.  Mr. Nersesian, however, did not avail himself of the opportunity to do so.

3.      On October, 24, 2018, at the parties' initial case conference, I again offered to permit Mr. Nersesian the opportunity to view the surveillance videos, and he again did not avail himself of that opportunity.  I told him I wanted him to see the video as it depicted his client reaching for his waist band when security was approaching him concerning his threats of violence.

4.      On December 31, 2018, LVRH timely served its responses to Plaintiff's request for production of documents.  *See* P. Mot., Ex. 1.  When responding to Request No. 2, Plaintiff objected to Plaintiffs request for the surveillance video, but indicated that the video would be provided "upon the execution of a mutually agreeable confidentiality agreement."  *See* P. Mot., Ex. 1, LVRH's Responses to Request for Production of Documents, at 3:15-17.

5.      On the same day LVRH's responses were served, I emailed to Mr. Nersesian a proposed stipulated protective order.  *See* Ex. A, Email dated December 31, 2018 with attached proposed stipulated protective order.   In the email, I indicated that I would be willing to "consider any changes [he] wished to make."  Mr. Nersesian, however, never offered a draft of proposed edits.

6.      Instead, on January 17, 2019, Mr. Nersesian called me to question why LVRH refused to provide a copy of the surveillance video.  I reminded him that LVRH did not refuse to provide a copy of the video, but that the video would be provided upon stipulating to a protective order.  Mr. Nersesian then insisted that the video be provided without a protective order.  When I asked why he refused to so stipulate, he did not give any substantive reason why the proposed protective order was objectionable, but instead stated that he refused to stipulate because "it would be a pain in the ass."  When I indicated that being a "pain in the ass" was not proper grounds for refusing to stipulate, the only other reason that Mr. Nersesian offered for his refusal was that LVRH was not entitled to a protective order.

7.      Mr. Nersesian then asked why LVRH was proposing a stipulated protective order.  I indicated that LVRH's views its surveillance videos as confidential because disclosing those videos could reveal camera locations and camera angles, which could be used to find holes in LVRH's surveillance system.  I also indicated that these videos were confidential because they revealed the

tactics that LVRH's employs when responding to security threats.  I remind Mr. Nersesian that he had already conceded that security camera positions were confidential when, in Request No. 21, he indicated he would "execute a protective order" with respect to his request for camera locations. Although Plaintiff never objected to any language in the proposed stipulated protective order as prejudicial, Mr. Nersesian asked me to re-draft the stipulated protective order to address only camera locations as set forth in Request No. 21.  I informed Mr. Nersesian that LVRH declined to resolve this dispute by piecemeal as it would not resolve the larger issue of the production of the surveillance videos, along with other objections to Plaintiff's request based on confidentiality.

8.      Rather than execute the proposed stipulated protective order, to which Plaintiff had no substantive objection, and despite LVRH's good faith attempt to resolve this discovery dispute, on January 18, 2019, Plaintiff filed a time consuming motion to compel disclosure of surveillance videos at issue in this case.

Dated this 7th day of  February 2019

**CHRIS DAVIS, ESQ.**

By:      */s/ Chris Davis*                                    _
CHRIS DAVIS, ESQ.
Nevada Bar No. 6616

## III.  LAW AND ARGUMENT

Plaintiff admits that LVRH offered to provide the surveillance videos sought upon the Plaintiff stipulating to a protective order preventing unauthorized disclosure of the videos.  Plaintiff offered no rational justification for refusing to agree to a protective order.  Instead, Plaintiff refused to do so merely because it would be a "pain in the ass."  Rule 26(c) of the Nevada Rules of Civil Procedure, however grants this Court broad powers to enter a protective order to regulate the disclosure of sensitive information, such as the surveillance videos at issue in the case.  Rule 26(c) provides, in pertinent part:

Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with the other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending may make any order which

justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

\* \* \* \* \*

(2)  that the discovery may be had only on specified terms and conditions, including a designation of the time or place;
(3)  that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;

\* \* \* \* \*

(7)  that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way. . . .

Good cause is present to enter a protective order governing permitted disclosure of the surveillance videos because the videos contain confidential commercial information and the unrestricted disclosure of the video would result in "annoyance, embarrassment, oppression, or undue burden" to LVRH.

Relying on an identical federal rule, in *Phillip v. General Motors Corp.*, 307 F.3d 1206, 211 (9th Cir. 2002), the Ninth Circuit rejected the argument that "only certain types of information can be subject to a protective order" and held that the law "gives district courts broad latitude to grant protective orders to prevent disclosure of materials for many types of information, including, but not limited to, trade secrets or other confidential research, development, or commercial information." The court explained: "Rule 26(c) authorizes the district court to issue '*any* order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden.'" *Id*. The court concluded the "unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders." *Id*. at 1212.

In *Borom v. Menard, Inc.*, Case No. 2:14-CV-22-JVB-PRC, 2014 WL 4209459, at \*2 (N.D. Ind. Aug. 26, 2014), consistent with the reasoning in *Phillips*, the court denied a motion to compel the production of hardware store's surveillance video in a personal injury action, and granted the motion for a protective order.  The order required that before the video could be disclosed "to anyone except the attorneys working on this case. . . ,  they must first be advised about [the protective order] and . . . must agree, in writing, to be bound by the terms of [the] Order." *Id*.  The court held that "good cause" for the protective order was "established" because it "would be

relatively simple for an enterprising thief or fraudster to compare the footage to the actual layout of the store, discovering the blind spots." The court reasoned that "if not kept secret, little prevents this information from eventually finding its way into the hands of a third party that might use it wrongly." *Id*. The court concluded that a protective order was justified because "sharing the video footage without any confidentiality protections would expose the store to a greater risk of theft or fraudulent lawsuits." *Id*.

Courts have repeatedly found "good cause" to protect the production of surveillance videos. In *McMillen v. Windham*, Case No. 3:16-CV-558-CRS, 2018 WL 652829, at *4 (W.D. Ky. Jan. 31, 2018), the Court adopted the reasoning *Borom* and found "that to allow the production, dissemination, and use of the [detention facility] video footage to be unrestricted could create security and safety risks to the current staff of that facility and to the public," even though facility was no longer used as a detention center, but instead used as a secured facility for the police department.  The court found "persuasive concerns about safety in granting protective orders in relation to security camera footage in retail settings [found in *Borom*], even though such a setting raises different, less serious concerns than a detention facility." *Id*. The court order that the video be disclosed only to "counsel of record," along with counsel's "necessary" employees, and "experts," "consultants," "court personnel," and "deposition witnesses to whom disclosure is reasonably necessary," provided that all such persons are "instructed not disclose the video footage to third parties and return all originals and copies consistent with [the court's] order." *Id.* at *5.

Likewise, in *Lumpkin v. Salt*, Case No. C18-330-RSM-JPD, 2018 WL 4002539, at *2 (W.D. Wash. Aug. 22, 2018), the court found that providing "access to recordings of jail surveillance videos would give [others] specific intelligence information regarding the surveillance and recording capabilities and weaknesses of cameras at locations depicted in the video at issue." The court further found that the videos would disclose "staff response times, locations from which staff are responding, the length of time it takes to open doors into an area, staffing patterns, specific defense tactics or techniques, and weaknesses and abilities of individual staff members, all of which would undermine the efficacy of the surveillance system." *Id*. The Court held that "good cause" was present for granting the motion for a protective order because "[d]efendants have detailed legitimate

security concerns relating to the potential for distribution of the requested video footage." *Id*. at *1 - *2; *see also Jarrell v. Kroger Ltd. P'ship I*, Case No. 2:14CV57, 2014 WL 12770216, at *5 (E.D. Va. July 17, 2014) (granting a protective order to retail store because the store "has a legitimate interest in maintaining the confidentiality and proprietary nature of its security system").

LVRH has the same legitimate interest in maintain the confidentiality and proprietary nature of its security system. Plaintiff concedes that casino security concerns, which includes casino surveillance videos, are much more serious that in the normal retail setting because such security is mandated by Nevada Gaming Regulations. *See* P. Mot. at 8:11-23. Plaintiff has also conceded that location of security camera positions should be protected by court order. *See* P. Mot., Ex. 1, LVRH's Response to Plaintiff's Request for Production of Documents, Request No. 21 at 9:25-2 (offering to "execute a protective order" with respect to "camera locations"). Just as in *Borom,* unrestricted release of the surveillance video would reveal camera position and angles which could be used to find "blind spots" in LVRH's security system. *See* Ex. B, Declaration of Mike Hnatuick, ¶ 3. Release of the video could also be used to reveal "security response times, the locations from where security responds, and the tactics and techniques employed by LVRH security personnel," all of which would undermine the efficacy of LVRH's security system. *See* Ex. B, Declaration of Mike Hnatuick, ¶ 4. The unrestricted release of the surveillance videos could create security and safety risks to both LVRH's employees and "to the public," which risk is ever present in light of recent attacks at casino properties. *See* Ex. B, Declaration of Mike Hnatuick, ¶¶ 3-4.

In addition to the security concerns, the unrestricted release of video is subject to potential abuse. In *Shultz v. Dart*, No. 13 C 3641, 2015 WL 4934552, at *3 (N.D. Ill. Aug. 18, 2015), the court found that there "is a genuine concern about the potential abuse" when releasing videos because "they can be cut and spliced and used as 'sound-bites' on the evening news" and because "[o]nce a video is put on the internet, it is virtually impossible to remove completely" due to the "explosive growth of social media and internet opportunities to broadcast portions of video recordings." The court recognized "publish[ing] out-of-context snippets" has the "significant potential for misuse and annoyance [which] constitute good cause to issue a protective order" with respect to videos. *Id.*

Only by issuing a protective order can the LVRH be shielded from misuse of the surveillance video, which unauthorized release would undermine the efficacy of LVRH's security system used to protect its employees and the public at large.  Plaintiff does not claim that the protective order proposed by LVRH will in any way impair his ability to present his case, other than his counsel's complaint that it would be a "pain in the ass."  Entering the protective order, however, will streamline discovery and permit LVRH to disclose not only the videos, but other confidential information requested by Plaintiff.

*In re Alexander Grant & Co. Litig*., 820 F.2d 352, 357 (11th Cir. 1987), the Eleventh Circuit upheld "an umbrella order restricting access to sensitive information in order to encourage maximum participation in the discovery process, conserve judicial resources and prevent the abuses of annoyance, oppression and embarrassment" associated with discovery responses.  The court found "good cause" to "issue a protective order pursuant to Rule 26(c)" because "[b]usy courts are simply unable to hold hearings every time someone wants to obtain judicial review concerning the nature of a particular document" and broad protective orders "encourage and simplify the exchanging of large numbers of documents, volumes of records and extensive files without concern of improper disclosure."  *Id.* at 356-57; s*ee also Phillips*, 307 F.3d at 1211 (holding that Rule 26(c) affords "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required").

Considering counsel's refusal to draft any modifications to the protective order proposed by LVRH, and conceded a lack of prejudice due to the protective order, this Court should grant LVRH's motion for a protective order and enter the order proposed by LVRH.  The entry of that order will simplify the exchange of documents between the parties, without any prejudice, and conserve the resources of the court and the parties.

IV.  **CONCLUSION**

Based on the foregoing, this Court should deny Plaintiff's motion to compel and grant LVRH's motion for a protective order in a form similar to that found attached to Exhibit A.

Dated this 7th day of February 2019.

**CHRIS DAVIS, ESQ.**

By:     */s/ Chris Davis*                              _
CHRIS DAVIS, ESQ.
Nevada Bar No. 6616
Associate General Counsel SLS Las Vegas
2535 Las Vegas Boulevard South
Las Vegas, Nevada 89109
Attorney for Defendants

## CERTIFICATE OF SERVICE

The undersigned certifies that, on the 7th day of February 2019, a true and correct copy of the foregoing **DEFENDANT LAS VEGAS RESORT HOLDINGS' OPPOSITION TO MOTION TO COMPEL AND COUNTERMOTION FOR PROTECTIVE ORDER** was served upon the following person via the Court's Electronic Filing system:

> Robert A. Nersesian, Esq.
> Nersesian & Sankiewicz
> 528 South Eighth Street
> Las Vegas, Nevada 89101
> Email: vegaslegal@aol.com
> Attorney for Plaintiff

*/s/ Chris Davis*, Esq.

# Exhibit A

# Exhibit A

**Chris Davis**

| | |
|---|---|
| **From:** | Chris Davis |
| **Sent:** | Monday, December 31, 2018 5:54 PM |
| **To:** | 'vegaslegal@aol.com' |
| **Subject:** | Nannis v SLS Las Vegas - Confidentiality Agreement |
| **Attachments:** | Stipulated Confidentiality Agreement.docx |

Bob,

Attached is my proposed confidentiality agreement and protective order.  If acceptable, please execute and email me that it is ready for pick up.  If you would like, I would be happy to discuss the matter with you further or consider any changes you may wish to make.

Thanks,

Chris

**Chris Davis, Esq.**
Associate General Counsel



2535 Las Vegas Blvd S. | Las Vegas, NV | 89109
T - 702-761-7711
C - 702-860-7521
E - Chris.Davis@SLSLasVegas.com
W - SLSLasVegas.com

NOTICE: This communication is CONFIDENTIAL and protected by the Attorney-Client and/or the Attorney Work Product Privileges.  It is intended solely for the addressees listed above.  If the recipient of this transmission is not the named addressee, the recipient should immediately notify the sender and destroy the information transmitted without making any copy or distributing any part thereof.

ELECTRONIC SIGNATURE: Nothing contained in this communication is intended to constitute an electronic signature unless a specific statement to the contrary is included in this message.

CHRIS DAVIS, ESQ.
Nevada Bar No. 6616
Associate General Counsel
SLS Las Vegas
chris.davis@slslasvegas.com
2535 Las Vegas Boulevard South
Las Vegas, Nevada 89109
Telephone: 702-761-7711
Facsimile:  702-761-3400
*Attorneys for Defendants*

## DISTRICT COURT
## CLARK COUNTY, NEVADA

MICHAEL NANNIS,

                                 Plaintiff,

        vs.

SB GAMMING, LLC, a foreign limited liability
company; LAS VEGAS RESORT HOLDINGS,
LLC dba SLS Las Vegas, a foreign limited
liability company; and DOES I-XX,

                                 Defendants.

Case No.:    A-18-779248-C

Dept. No.:   I

**STIPULATED CONFIDENTIALITY
AGREEMENT AND PROTECTIVE
ORDER**

        Plaintiff MICHAEL NANNIS and Defendants LAS VEGAS RESORT HOLDINGS, LLC

("LVRH") and SB GAMING, LLC ("SB Gaming"), by and through their respective counsels of

record, hereby stipulate and agree, subject to the Court's approval, that the production and handling of

confidential material in these proceedings (this "Action") shall be governed by the paragraphs set forth

below:

        1.        **Confidential Information**. In providing or revealing discovery material, any party

may designate as "CONFIDENTIAL" the whole or any part of discovery material which constitutes

trade secrets, know-how, proprietary data, marketing information, contacts, financial information,

corporate governance information, personal information, confidential research and development

information, and/or similar commercially sensitive business information or data which the designating

party in good faith believes in fact is confidential or that unprotected disclosure might result in harm

or injury to the privacy rights or contractual rights of the producing party and/or might result in

economic harm or competitive injury, and which is not publicly known and cannot be ascertained through an inspection of publicly available documents, materials, or devices. A party may also designate as "CONFIDENTIAL" compilations of publicly available discovery materials, which would not be known publicly in a compiled form.

2.      **Designation of Confidential Information**. If a party (the "Producing Party') in this Action determines that any of its documents or things or responses produced in the course of discovery in this Action should be designated as provided in Paragraph 1 and, therefore constitute "Confidential Information," the Producing Party shall advise the other party (the "Receiving Party") who has received such Confidential Information of this fact, and all copies of such document, or things, or responses, or portions thereof deemed to be confidential shall be marked "CONFIDENTIAL" at the expense of the Producing Party and treated as confidential by all parties. This Stipulation and Order applies to and governs the production and handling of all documents designated as "Confidential Information" and produced by any party or third party both prior and subsequent to the execution and entry of this Stipulation and Order.

3.      **Use of Confidential Information**.  All Confidential Information designated or marked as provided herein shall be used by the Receiving Party solely for the purposes of this Action, and shall not be disclosed to anyone other than those persons identified herein in Paragraph 5 and shall be handled in the manner set forth herein until such designation is removed by the Producing Party or by Order of the Court.  Such Confidential Information shall not be used by any Receiving Party or other person granted access thereto under this Stipulated Confidentiality Agreement and Protective Order (this "Stipulation and Order") for any other purpose, including, but not limited to, a business or competitive purpose. Nothing herein shall preclude the Producing Party from using its own Confidential Information.

4.      **Use of Confidential Information in Depositions**.  Any party shall have the right to use Confidential Information during depositions, provided that no third parties are present during such depositions.  At any deposition session, upon inquiry with regard to the content of a document marked "CONFIDENTIAL," or whenever counsel for a party deems that the answer to the question may result in the disclosure of Confidential Information, or whenever counsel for a party deems that the answer

to any questions has resulted in the disclosure of Confidential Information, the deposition (or portions thereof) may be designated by the affected party as containing Confidential Information subject to the provisions of this Stipulation and Order.  When such designation has been made, the testimony or the transcript of such testimony shall be disclosed only to those parties described in Paragraphs 5 or 6, and the information contained herein shall be used only as specified in this Stipulation and Order. Counsel for the person or entity whose Confidential Information is involved may also request that all persons not qualified under Paragraph 5 of this Stipulation and Order to have access to the Confidential Information leave the deposition room during the confidential portion of the deposition.  Failure of such other Persons to comply with a request to leave the deposition shall constitute substantial justification or counsel to advise the witness that the witness need not answer the question seeking the revelation of Confidential Information.  Moreover, all originals and copies of deposition transcripts that contain Confidential Information shall be prominently marked "CONFIDENTIAL" on the over thereof and, if and when filed with the Court, the portions of such transcript so designated hall be filed under seal.  Counsel must designate portions of a deposition transcript as CONFIDENTIAL" within thirty (30) days of receiving the transcript. Designations may be made by letter to counsel of record or on the record during the deposition.  Portions of deposition transcripts so designated shall be treated as Confidential Information by the parties set forth herein.  During the thirty (30) day period, the entire transcript shall be treated as confidential.  If no confidential designations are made within the thirty (30) day period, the entire transcript shall be considered non-confidential.

**5.    Disclosure of Confidential Information**.  Confidential Information produced Pursuant to this Stipulation and Order may be disclosed or made available only to the Court and to the persons designated below:

(a)    Retained counsel and in-house counsel for a party (including attorneys associated with the law firm of counsel and the paralegal, clerical, and secretarial staff employed by such counsel);

(b)    A party, or officers, directors, and employees of a party deemed necessary by counsel to aid in the prosecution, defense, or settlement of this Action;

(c)      Outside experts or consultants (together with their clerical and secretarial staff) retained by counsel for any party to assist in the prosecution, defense, or settlement of this Action, or the extent reasonably necessary to perform their work in connection with this Action;

(d)      Clerical and data processing personnel involved in the production, reproduction, Organizing, filing, coding, cataloging, converting, storing, retrieving, and review of discovery material, to the extent reasonably necessary to assist a party or its counsel in this Action;

(e)      This Court and its staff and any other court, tribunal or dispute resolution officer duly appointed, chosen or assigned in connection with this Action;

(f)      The original source of the Confidential Information (its author), and any addressee(s) and/or recipient(s) thereof who received such Confidential Information in the ordinary course of business;

(g)      Court reporter(s) and videographer(s) employed in this Action; and

(h)      Any other person as to whom the parties in writing agree or that the Court in this Action designates.

Any person to whom Confidential Information is disclosed pursuant to subparts (a), (b), (c), (d), (e), (f), or (h) of Paragraph 5 shall be advised that the Confidential Information is being disclosed pursuant to an Order of the Court, that the information may not be disclosed by such person to any person not permitted to have access to the Confidential Information pursuant to this Stipulation and Order, and that any violation of this Stipulation and Order may result in the imposition of such sanctions as the Court deems proper. Any person to whom Confidential information is disclosed pursuant to subparts (c) or (d) of Paragraph 5 shall also be required to execute a copy of the form Attachment A.

**6.      Highly Confidential Information**.  Parties may further designate information which contains highly sensitive commercial and proprietary information as "Attorney's Eyes Only" or "Highly Confidential" (hereinafter "Highly Confidential Information"), in the manner described in Paragraphs 2 and 4 above.  Highly Confidential Information shall be disclosed only to the following, unless otherwise agreed between the parties in writing or ordered by the Court:

(a)     Outside counsel of record for the parties (including attorneys associated with the law firm, of counsel and the paralegal, clerical, and secretarial staff employed by such counsel) and in-house counsel of the parties;

(b)     Outside experts or consultants (together with their clerical and secretarial staff) retained by counsel for any party to assist in the prosecution, defense, or settlement of this Action, to the extent reasonably necessary to perform their work in connection with this Action;

(c)     The Court and its staff and any other court, tribunal or dispute resolution officer duly appointed, chosen, or assigned in connection with this Action;

(d)     Clerical and data processing personnel involved in the production, reproduction, organizing, filing, coding cataloging, converting, storing, retrieving, and review of discovery material, to the extent reasonably necessary to assist a party or its counsel in this Action;

(e)     Court reporter(s) and videographer(s) employed in this Action; and

(f)     Any other person as to whom the parties in writing agree or that the Court in this Action designates.

If disclosure of Highly Confidential Information is made pursuant to this Paragraph, all other provisions in this Stipulation and Order with respect to confidentiality shall also apply.

**7.     Use of Highly Confidential Information**.   All Highly Confidential Information Designated or marked as provided herein shall be used by the Receiving Party solely for the purposes of this Action and shall not be disclosed to anyone other than those persons identified herein and shall be handled in the manner set forth herein until such designation is removed by the Producing Party or by Order of the Court.  Such Highly Confidential Information shall not be used by any Receiving Party or other person granted access thereto under this Stipulation and Order for any purpose including, but not limited to, a business or competitive purpose.  Nothing herein shall preclude the Producing Party from using its own Highly Confidential Information.

**8.     Filing of Confidential Information with Court**.  Any Confidential Information or Highly Confidential Information (collectively, "Confidential Material") which is filed with the Court by any party, including transcripts of depositions or portions thereof, documents produced in discovery, information obtained from inspection of premises or things, and answers to interrogatories

or requests for admissions, exhibits and all other documents which have previous hereto been designated as containing Confidential Material or any pleading or memorandum reproducing or containing such information, shall be filed in accordance with the Nevada Rules for Sealing and Redacting Court Records in sealed envelopes bearing the title of this Action and the notation:

**CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER**
**To Be Opened Only Upon Further Order of this Court**
**or for the Sole Use of the Court and its Employees**

All such sealed envelopes shall not be opened except for the sole use of this Court or its employees or as otherwise ordered by the Court. Further, all such sealed envelopes shall be maintained by the Clerk of the Court separate from the public records in this Action and shall be released only upon further order of the Court

9. **Application to Third Parties**. This Stipulation and Order shall inure to the benefit of and may be invoked and enforced by third parties with respect to documents and information produced by them in the course of pretrial discovery in this Action and designated by them as "CONFIDENTIAL" in the manner provided herein. Any third party invoking this Stipulation and Order shall comply with, and be subject to, all paragraphs of this Stipulation and Order

10. **Knowledge of Unauthorized Use or Possession**. The Receiving Party shall immediately notify the Producing Party in writing if the Receiving Party learns of any unauthorized possession, knowledge, use, or disclosure of any Confidential Material which has occurred by way of Confidential Material being provided to that Receiving Party. The Receiving Party shall promptly furnish the Producing Party the full details of such possession, knowledge, use, or disclosure. With respect to such unauthorized possession, knowledge, use, or disclosure, the Receiving Party shall assist the Producing Party in preventing its recurrence of and shall cooperate fully with the Producing Party in any litigation to prevent unauthorized use or further dissemination of the Confidential Material.

11. **Copies, Summaries or Abstracts**. Any copies, summaries, abstracts, or duplications of Confidential Information shall be marked "Confidential" and shall be considered Confidential Information subject to the terms and conditions of this Stipulation and Order. Attorney-client communications and attorney work product regarding Confidential Information shall not be subject to

this Paragraph, regardless of whether they summarize, abstract, paraphrase, or otherwise reflect Confidential Information.

**12.    Copies, Summaries or Abstracts of Highly Confidential Information**.  Any copies summaries, abstracts or exact duplications of Highly Confidential Information, other than attorney-client communication and attorney work product, shall be marked "Highly Confidential Information" or "Attorney's Eyes Only" and shall be considered Highly Confidential Information subject to the terms and conditions of this Stipulation and Order.  With respect to attorney-client communications and attorney work product containing portions of or the specific substance of any Highly Confidential Information, such documents shall be maintained in confidence and may be disclosed only to the persons entitled to review Highly Confidential Information as identified in Paragraph 6 of this Stipulation and Order.

**13.    Information Not Confidential.**  The restrictions set forth in this Stipulation and Order shall not be construed:

(a)    To apply to information obtained by a party from any third party to this Action having the right to disclose such information subsequent to the production of information by the designating party; or

(b)    To apply to information or other materials that have been or become party of the Public domain by publication or otherwise and not due to any unauthorized act or omission on the part of a Receiving Party; or

(c)    To apply to information or other materials that, under law, have been declared to be in the public domain.

**14.    Designation of Discovery Materials.**  Documents and other discovery materials or portions thereof) constituting, comprising, containing, or referring to Confidential Material, in whole or in part, shall be identified by being marked or stamped as "CONFIDENTIAL" or HIGHLY CONFDENTIAL," as applicable. With respect to a multi-page document that contains Confidential Material, the designation should be made, to the extent possible, on each page of the document.  If designation in this manner is impossible or impractical, the Producing Party may use such other method or designation as is reasonable under the circumstances.  "Attorneys' Eyes Only" documents

will be disclosed and identified as such by the Producing Party and made available for inspection as discussed herein.

**15.    Challenges to Designations**.  If at the time during the preparation for trial or during the trial of this Action, counsel for any party claims that counsel for any other party or nonparty has unreasonably designated certain information as Confidential Material, or believes that it is necessary to disclose designated information to persons other than those permitted by this Stipulation and Order, the objecting counsel may make an appropriate application to the Court requesting that the specific documents, information, and/or deposition testimony be excluded from be provisions of this Stipulation and Order or be available to specified other persons.  Each party shall be given notice and reasonable time (not less that fourteen (14) calendar days and not more than thirty (30) calendar days) to object to the disclosure. The party claiming confidentiality shall have the initial burden of establishing confidentiality.

**16.    Use in Court**.  In the event that any Confidential Material is used in any pretrial court proceeding in this Action, it shall not lose its confidential status through such use, and the party using such shall take all reasonable steps to maintain its confidentiality during such use, including without limitation, requesting that the Court seal any transcript with respect to such proceeding.  Nothing in this Stipulation and Order, or designations or confidentiality hereunder, shall in any way affect the treatment of Confidential Material at the trial of this Action. Within thirty (30) days after the conclusion of discovery, the parties shall confer and, if necessary, submit appropriate motions to the Court setting forth their positions as to the treatment at trial of Confidential Material.

**17.    No Waiver Regarding Confidential Nature of Information**. This Stipulation and Order is entered solely for the purpose of facilitating the exchange of documents and information among the parties to this Action without involving the court unnecessarily in the process.  Nothing in this Stipulation and Order nor the production of any information or document under the terms of this Stipulation and Order, nor any proceedings pursuant to this Stipulation and Order shall be deemed (i) to have the effect of an admission or a waiver by any party of the confidentiality or non-confidentiality of any materials, (ii) to alter the confidentiality or the non-confidentiality of any such document or information, (iii) to alter any existing obligation of any party or the absence thereof, and/or (iv) to

affect in any way the authenticity or admissibility or any document, testimony, or other evidence at the trial. Entry of this Stipulation and Order does not preclude any party from seeking or opposing additional protection for particular information.

**18.    Inadvertent Failure to Designate**.  The inadvertent failure of a Producing Party to designate discovery materials as Confidential Information or Highly Confidential Information as such (whether in the form of documents, interrogatories, testimony, or otherwise) shall not be deemed, by itself, to be a waiver of the party's or third party's right to so designate such discovery materials. Immediately upon learning of any such inadvertent failure, the Producing Party shall notify all receiving parties of such inadvertent failure and take such other steps as necessary to correct such failure after becoming aware of it.  However, disclosure by a Receiving Party of such discovery materials to any other person prior to later designation of the discovery materials in accordance with this paragraph shall not violate the terms of this Stipulation and Order.

**19.    No waiver of Privilege.**  This Stipulation and Order will not prejudice the right of any party or third party to oppose production of any information on the ground of attorney-client privilege, attorney work product privilege, or any other privilege or protection provided under the law.

**20.    Return or Destruction of Information**.  Within thirty (30) days after the conclusion of this Action, including any appeal thereof, or the conclusion of any other legal proceeding (including arbitration proceedings) between any or all of the parties to this Action, all documents and things, including transcripts of depositions (or appropriate portions of such transcripts), together with all copies thereof, which have been designated as Confidential Material, shall be returned to the designating party.  In lieu of returning such designated materials as provided above, counsel for the Receiving Party may certify in writing to counsel for the designating party that the materials have been destroyed.

**21.    Injunctive Relief Available**.  Each party acknowledges that monetary remedies are inadequate to protect each party in the case of unauthorized disclosure or use of Confidential Material and that injunctive relief shall be appropriate to protect each party's rights in the even there is any such unauthorized disclosure or use of Confidential Material.

**22.** **Other Actions and Proceedings**. If a Receiving Party (a) is subpoenaed in another action or proceeding, (b) is served with a demand in another action or proceeding in which the Receiving Party is a party, or (c) is served with legal process by one not a party to this Stipulation and Order, seeking discovery materials which were produced or designated as Confidential Information or Highly Confidential pursuant to this Stipulation and Order, the Receiving Party shall give prompt actual written notice by hand or email to counsel of record for such Producing Party within five (5) business days of receipt of such subpoena, demand, or legal process or such shorter notice as may be required to provide the producing Party the opportunity to object to the immediate production of the requested discovery material to the extent permitted by law.  Should the person seeking access to the Confidential Information or Highly Confidential Information take action against the Receiving Party or anyone else covered by this Stipulation and order to enforce such a subpoena, demand, or other legal process, the Receiving Party shall respond by setting forth the existence of this Stipulation and Order.

**23.** **Order Survives Termination**.  This Stipulation and Order shall survive the termination of this Action, and the Court shall retain continuing jurisdiction to enforce this Stipulation and Order, make any amendment(s), modification(s), or alteration(s) thereto as may be appropriate, and/or to resolve any dispute concerning the use, production and/or disclosure of Confidential Material as provided herein.

DATED this _____ day of _____, 2019.

NERSESIAN & SANKIEWICZ               CHRIS DAVIS, ESQ.


By: _____      By: _____
Robert A. Nersesian                  Chris Davis, Esq.
Nevada Bar No. 2762                   Nevada Bar No. 6616
528 S. Eighth Street                  2535 Las Vegas Blvd S
Las Vegas, Nevada 89101              Las Vegas, NV 89109
Attorney for Plaintiff                Attorney for Defendants

1

## **<u>ORDER</u>**

2  Based on the parties' stipulation, and for good cause showing,

3

4  **IT IS SO ORDERED**

5  DATED this _____ day of _____, 2019

6

7  By: _____

8  Honorable Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  Page 11 of 12

28

**FORM ATTACHMENT "A"**
**<u>CONFIDENTIALITY AGREEMENT</u>**

I, _____, do hereby acknowledge and agree as follows:

1.      I have read the Stipulated Confidentiality Agreement and Protective Order of which the form of this Agreement is an attachment.

2.      I understand the terms of the Stipulated Confidentiality Agreement and Protective Order and agree to be bound by and to strictly adhere to all terms and provisions of the Stipulated Confidentiality Agreement and Protective Order.

3.      I hereby submit to the jurisdiction of the Eighth Judicial District Court of the State of Nevada, County of Clark, solely for the purpose of the enforcement of the Stipulated Confidentiality Agreement and Protective Order and this Agreement.


DATED this _____ day of _____, 2019


_____
(Signature)

_____

_____
(Name, Address, Telephone Number)

# Exhibit B

# Exhibit B

## DECLARATION OF MIKE HNATUICK

I, Mike Hnatuick, do hereby declare, under penalty of perjury, and state as follows:

1.      I am the Director of Security for the SLS Las Vegas Hotel and Casino ("SLS") and employed by Las Vegas Resort Holdings, LLC ("LVRH"), which operates the SLS.

2.      I have been employed by LVRH for three and half years, and served as Director of Security for LVRH for one and half years.  Before my employment with LVRH, I was employed by the Las Vegas Metropolitan Police Department for 25 years, when I retired from Metro as a Sergeant.  I make this declaration based on my 30 years in law enforcement and security, and I have personal knowledge of the matters stated herein and can testify thereto.

3.      LVRH has a policy restricting the release of copies of its surveillance videos due to their confidential nature.  These videos are confidential because the release of these videos would reveal both angle and position of LVRH's surveillance cameras, which if indiscriminately disclosed could be used to find blind spots or weaknesses in LVRH's security systems.

4.      The surveillance videos of Plaintiff Michael Nannis, recorded on April 1, 2018, are also confidential because the videos disclose security response times, the locations from where security responds, and the tactics and techniques employed by LVRH security personnel.  These videos are confidential because disclosure could be used to devise tactics to thwart LVRH security equipment and procedures, and risk the safety of both LVRH employees and SLS patrons.

Executed on 7th day of February 2019.

_____
MIKE HNATUICK

1

# Exhibit 7

# Exhibit 7

Electronically Filed
3/7/2019 12:07 PM
Steven D. Grierson
CLERK OF THE COURT

1  CHRIS DAVIS, ESQ.
   Nevada Bar No. 6616
2  Associate General Counsel
   SLS Las Vegas
3  chris.davis@slslasvegas.com
4  2535 Las Vegas Boulevard South
   Las Vegas, Nevada 89109
5  Telephone: 702-761-7711
   Facsimile:  702-761-3400
6  *Attorneys for Defendants*

7

8
                    **DISTRICT COURT**
                  **CLARK COUNTY, NEVADA**

9
   MICHAEL NANNIS,
10
                              Plaintiff,          Case No.:   A-18-779248-C
11
              vs.                                 Dept. No.:  I
12
   SB GAMMING, LLC, a foreign limited liability   **STIPULATED CONFIDENTIALITY**
13 company; LAS VEGAS RESORT HOLDINGS,            **AGREEMENT AND PROTECTIVE**
   LLC dba SLS Las Vegas, a foreign limited       **ORDER**
14 liability company; and DOES I-XX,
15
                              Defendants.
16

17       Plaintiff MICHAEL NANNIS and Defendants LAS VEGAS RESORT HOLDINGS, LLC

18 ("LVRH") and SB GAMING, LLC ("SB Gaming"), by and through their respective counsels of

19 record, hereby stipulate and agree, subject to the Court's approval, that the production and handling

20 of confidential material in these proceedings (this "Action") shall be governed by the paragraphs set

21 forth below:

22       **1.      Confidential Information.** In providing or revealing discovery material, any party

23 may designate as "CONFIDENTIAL" the whole or any part of discovery material which constitutes

24 trade secrets, know-how, proprietary data, marketing information, contacts, financial information,

25 corporate governance information, personal information, confidential research and development

26 information, and/or similar commercially sensitive business information or data which the

27 designating party in good faith believes in fact is confidential or that unprotected disclosure might

28 result in harm or injury to the privacy rights or contractual rights of the producing party and/or might

result in economic harm or competitive injury, and which is not publicly known and cannot be ascertained through an inspection of publicly available documents, materials, or devices. A party may also designate as "CONFIDENTIAL" compilations of publicly available discovery materials, which would not be known publicly in a compiled form.

       **2.**     **Designation of Confidential Information**. If a party (the "Producing Party') in this Action determines that any of its documents or things or responses produced in the course of discovery in this Action should be designated as provided in Paragraph 1 and, therefore constitute "Confidential Information," the Producing Party shall advise the other party (the "Receiving Party") who has received such Confidential Information of this fact, and all copies of such document, or things, or responses, or portions thereof deemed to be confidential shall be marked "CONFIDENTIAL" at the expense of the Producing Party and treated as confidential by all parties. This Stipulation and Order applies to and governs the production and handling of all documents designated as "Confidential Information" and produced by any party or third party both prior and subsequent to the execution and entry of this Stipulation and Order.

       **3.**     **Use of Confidential Information**.   All Confidential Information designated or marked as provided herein shall be used by the Receiving Party solely for the purposes of this Action, and shall not be disclosed to anyone other than those persons identified herein in Paragraph 5 and shall be handled in the manner set forth herein until such designation is removed by the Producing Party or by Order of the Court.  Such Confidential Information shall not be used by any Receiving Party or other person granted access thereto under this Stipulated Confidentiality Agreement and Protective Order (this "Stipulation and Order") for any other purpose, including, but not limited to, a business or competitive purpose. Nothing herein shall preclude the Producing Party from using its own Confidential Information.

       **4.**     **Use of Confidential Information in Depositions**.  Any party shall have the right to use Confidential Information during depositions, provided that no third parties are present during such depositions.  At any deposition session, upon inquiry with regard to the content of a document marked "CONFIDENTIAL," or whenever counsel for a party deems that the answer to the question may result in the disclosure of Confidential Information, or whenever counsel for a party deems that

the answer to any questions has resulted in the disclosure of Confidential Information, the deposition (or portions thereof) may be designated by the affected party as containing Confidential Information subject to the provisions of this Stipulation and Order.  When such designation has been made, the testimony or the transcript of such testimony shall be disclosed only to those parties described in Paragraphs 5 or 6, and the information contained herein shall be used only as specified in this Stipulation and Order. Counsel for the person or entity whose Confidential Information is involved may also request that all persons not qualified under Paragraph 5 of this Stipulation and Order to have access to the Confidential Information leave the deposition room during the confidential portion of the deposition.  Failure of such other Persons to comply with a request to leave the deposition shall constitute substantial justification or counsel to advise the witness that the witness need not answer the question seeking the revelation of Confidential Information.  Moreover, all originals and copies of deposition transcripts that contain Confidential Information shall be prominently marked "CONFIDENTIAL" on the over thereof and, if and when filed with the Court, the portions of such transcript so designated hall be filed under seal.  Counsel must designate portions of a deposition transcript as CONFIDENTIAL" within thirty (30) days of receiving the transcript. Designations may be made by letter to counsel of record or on the record during the deposition.  Portions of deposition transcripts so designated shall be treated as Confidential Information by the parties set forth herein.  During the thirty (30) day period, the entire transcript shall be treated as confidential.  If no confidential designations are made within the thirty (30) day period, the entire transcript shall be considered non-confidential.

   **5.   Disclosure of Confidential Information**.   Confidential Information produced Pursuant to this Stipulation and Order may be disclosed or made available only to the Court and to the persons designated below:

   (a)   Retained counsel and in-house counsel for a party (including attorneys associated with the law firm of counsel and the paralegal, clerical, and secretarial staff employed by such counsel);

   (b)   A party, or officers, directors, and employees of a party deemed necessary by counsel to aid in the prosecution, defense, or settlement of this Action;

(c)     Outside experts or consultants (together with their clerical and secretarial staff) retained by counsel for any party to assist in the prosecution, defense, or settlement of this Action, or the extent reasonably necessary to perform their work in connection with this Action;

(d)     Clerical and data processing personnel involved in the production, reproduction, Organizing, filing, coding, cataloging, converting, storing, retrieving, and review of discovery material, to the extent reasonably necessary to assist a party or its counsel in this Action;

(e)     This Court and its staff and any other court, tribunal or dispute resolution officer duly appointed, chosen or assigned in connection with this Action;

(f)     The original source of the Confidential Information (its author), and any addressee(s) and/or recipient(s) thereof who received such Confidential Information in the ordinary course of business;

(g)     Court reporter(s) and videographer(s) employed in this Action; and

(h)     Any other person as to whom the parties in writing agree or that the Court in this Action designates.

Any person to whom Confidential Information is disclosed pursuant to subparts (a), (b), (c), (d), (e), (f), or (h) of Paragraph 5 shall be advised that the Confidential Information is being disclosed pursuant to an Order of the Court, that the information may not be disclosed by such person to any person not permitted to have access to the Confidential Information pursuant to this Stipulation and Order, and that any violation of this Stipulation and Order may result in the imposition of such sanctions as the Court deems proper. Any person to whom Confidential information is disclosed pursuant to subparts (c) or (d) of Paragraph 5 shall also be required to execute a copy of the form Attachment A.

**6.     Highly Confidential Information**.  Parties may further designate information which contains highly sensitive commercial and proprietary information as "Attorney's Eyes Only" or "Highly Confidential" (hereinafter "Highly Confidential Information"), in the manner described in Paragraphs 2 and 4 above.  Highly Confidential Information shall be disclosed only to the following, unless otherwise agreed between the parties in writing or ordered by the Court:

(a)     Outside counsel of record for the parties (including attorneys associated with the law firm, of counsel and the paralegal, clerical, and secretarial staff employed by such counsel) and in-house counsel of the parties;

(b)     Outside experts or consultants (together with their clerical and secretarial staff) retained by counsel for any party to assist in the prosecution, defense, or settlement of this Action, to the extent reasonably necessary to perform their work in connection with this Action;

(c)     The Court and its staff and any other court, tribunal or dispute resolution officer duly appointed, chosen, or assigned in connection with this Action;

(d)     Clerical and data processing personnel involved in the production, reproduction, organizing, filing, coding cataloging, converting, storing, retrieving, and review of discovery material, to the extent reasonably necessary to assist a party or its counsel in this Action;

(e)     Court reporter(s) and videographer(s) employed in this Action; and

(f)     Any other person as to whom the parties in writing agree or that the Court in this Action designates.

If disclosure of Highly Confidential Information is made pursuant to this Paragraph, all other provisions in this Stipulation and Order with respect to confidentiality shall also apply.

**7.     Use of Highly Confidential Information**.   All Highly Confidential Information Designated or marked as provided herein shall be used by the Receiving Party solely for the purposes of this Action and shall not be disclosed to anyone other than those persons identified herein and shall be handled in the manner set forth herein until such designation is removed by the Producing Party or by Order of the Court.   Such Highly Confidential Information shall not be used by any Receiving Party or other person granted access thereto under this Stipulation and Order for any purpose including, but not limited to, a business or competitive purpose.   Nothing herein shall preclude the Producing Party from using its own Highly Confidential Information.

**8.     Filing of Confidential Information with Court**.   Any Confidential Information or Highly Confidential Information (collectively, "Confidential Material") which is filed with the Court by any party, including transcripts of depositions or portions thereof, documents produced in discovery, information obtained from inspection of premises or things, and answers to

interrogatories or requests for admissions, exhibits and all other documents which have previous hereto been designated as containing Confidential Material or any pleading or memorandum reproducing or containing such information, shall be filed in accordance with the Nevada Rules for Sealing and Redacting Court Records in sealed envelopes bearing the title of this Action and the notation:

**CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER**
**To Be Opened Only Upon Further Order of this Court**
**or for the Sole Use of the Court and its Employees**

All such sealed envelopes shall not be opened except for the sole use of this Court or its employees or as otherwise ordered by the Court. Further, all such sealed envelopes shall be maintained by the Clerk of the Court separate from the public records in this Action and shall be released only upon further order of the Court

**9.     Application to Third Parties**.  This Stipulation and Order shall inure to the benefit of and may be invoked and enforced by third parties with respect to documents and information produced by them in the course of pretrial discovery in this Action and designated by them as "CONFIDENTIAL" in the manner provided herein.  Any third party invoking this Stipulation and Order shall comply with, and be subject to, all paragraphs of this Stipulation and Order

**10.     Knowledge of Unauthorized Use or Possession**.  The Receiving Party shall immediately notify the Producing Party in writing if the Receiving Party learns of any unauthorized possession, knowledge, use, or disclosure of any Confidential Material which has occurred by way of Confidential Material being provided to that Receiving Party.  The Receiving Party shall promptly furnish the Producing Party the full details of such possession, knowledge, use, or disclosure.  With respect to such unauthorized possession, knowledge, use, or disclosure, the Receiving Party shall assist the Producing Party in preventing its recurrence of and shall cooperate fully with the Producing Party in any litigation to prevent unauthorized use or further dissemination of the Confidential Material.

**11.     Copies, Summaries or Abstracts**.  Any copies, summaries, abstracts, or duplications of Confidential Information shall be marked "Confidential" and shall be considered Confidential

Information subject to the terms and conditions of this Stipulation and Order. Attorney-client communications and attorney work product regarding Confidential Information shall not be subject to this Paragraph, regardless of whether they summarize, abstract, paraphrase, or otherwise reflect Confidential Information.

**12.    Copies, Summaries or Abstracts of Highly Confidential Information**. Any copies summaries, abstracts or exact duplications of Highly Confidential Information, other than attorney-client communication and attorney work product, shall be marked "Highly Confidential Information" or "Attorney's Eyes Only" and shall be considered Highly Confidential Information subject to the terms and conditions of this Stipulation and Order. With respect to attorney-client communications and attorney work product containing portions of or the specific substance of any Highly Confidential Information, such documents shall be maintained in confidence and may be disclosed only to the persons entitled to review Highly Confidential Information as identified in Paragraph 6 of this Stipulation and Order.

**13.    Information Not Confidential.** The restrictions set forth in this Stipulation and Order shall not be construed:

(a)    To apply to information obtained by a party from any third party to this Action having the right to disclose such information subsequent to the production of information by the designating party; or

(b)    To apply to information or other materials that have been or become party of the Public domain by publication or otherwise and not due to any unauthorized act or omission on the part of a Receiving Party; or

(c)    To apply to information or other materials that, under law, have been declared to be in the public domain.

**14.    Designation of Discovery Materials.** Documents and other discovery materials or portions thereof) constituting, comprising, containing, or referring to Confidential Material, in whole or in part, shall be identified by being marked or stamped as "CONFIDENTIAL" or HIGHLY CONFDENTIAL," as applicable. With respect to a multi-page document that contains Confidential Material, the designation should be made, to the extent possible, on each page of the dlocument. If

1   designation in this manner is impossible or impractical, the Producing Party may use such other

2   method or designation as is reasonable under the circumstances.  "Attorneys' Eyes Only" documents

3   will be disclosed and identified as such by the Producing Party and made available for inspection as

4   discussed herein.

5       **15.     Challenges to Designations**.  If at the time during the preparation for trial or during

6   the trial of this Action, counsel for any party claims that counsel for any other party or nonparty has

7   unreasonably designated certain information as Confidential Material, or believes that it is necessary

8   to disclose designated information to persons other than those permitted by this Stipulation and

9   Order, the objecting counsel may make an appropriate application to the Court requesting that the

10   specific documents, information, and/or deposition testimony be excluded from be provisions of this

11   Stipulation and Order or be available to specified other persons.  Each party shall be given notice

12   and reasonable time (not less that fourteen (14) calendar days and not more than thirty (30) calendar

13   days) to object to the disclosure. The party claiming confidentiality shall have the initial burden of

14   establishing confidentiality.

15       **16.     Use in Court**.  In the event that any Confidential Material is used in any pretrial court

16   proceeding in this Action, it shall not lose its confidential status through such use, and the party

17   using such shall take all reasonable steps to maintain its confidentiality during such use, including

18   without limitation, requesting that the Court seal any transcript with respect to such proceeding.

19   Nothing in this Stipulation and Order, or designations or confidentiality hereunder, shall in any way

20   affect the treatment of Confidential Material at the trial of this Action. Within thirty (30) days after

21   the conclusion of discovery, the parties shall confer and, if necessary, submit appropriate motions to

22   the Court setting forth their positions as to the treatment at trial of  Confidential Material.

23       **17.     No Waiver Regarding Confidential Nature of Information**. This Stipulation and

24   Order is entered solely for the purpose of facilitating the exchange of documents and information

25   among the parties to this Action without involving the court unnecessarily in the process.  Nothing in

26   this Stipulation and Order nor the production of any information or document under the terms of this

27   Stipulation and Order, nor any proceedings pursuant to this Stipulation and Order shall be deemed (i)

28   to have the effect of an admission or a waiver by any party of the confidentiality or non-

confidentiality of any materials, (ii) to alter the confidentiality or the non-confidentiality of any such document or information, (iii) to alter any existing obligation of any party or the absence thereof, and/or (iv) to affect in any way the authenticity or admissibility or any document, testimony, or other evidence at the trial. Entry of this Stipulation and Order does not preclude any party from seeking or opposing additional protection for particular information.

**18.   Inadvertent Failure to Designate**.  The inadvertent failure of a Producing Party to designate discovery materials as Confidential Information or Highly Confidential Information as such (whether in the form of documents, interrogatories, testimony, or otherwise) shall not be deemed, by itself, to be a waiver of the party's or third party's right to so designate such discovery materials. Immediately upon learning of any such inadvertent failure, the Producing Party shall notify all receiving parties of such inadvertent failure and take such other steps as necessary to correct such failure after becoming aware of it.  However, disclosure by a Receiving Party of such discovery materials to any other person prior to later designation of the discovery materials in accordance with this paragraph shall not violate the terms of this Stipulation and Order.

**19.   No waiver of Privilege.**  This Stipulation and Order will not prejudice the right of any party or third party to oppose production of any information on the ground of attorney-client privilege, attorney work product privilege, or any other privilege or protection provided under the law.

**20.   Return or Destruction of Information**.  Within thirty (30) days after the conclusion of this Action, including any appeal thereof, or the conclusion of any other legal proceeding (including arbitration proceedings) between any or all of the parties to this Action, all documents and things, including transcripts of depositions (or appropriate portions of such transcripts), together with all copies thereof, which have been designated as Confidential Material, shall be returned to the designating party.  In lieu of returning such designated materials as provided above, counsel for the Receiving Party may certify in writing to counsel for the designating party that the materials have been destroyed.

**21.   Injunctive Relief Available**.  Each party acknowledges that monetary remedies are inadequate to protect each party in the case of unauthorized disclosure or use of Confidential

1  Material and that injunctive relief shall be appropriate to protect each party's rights in the even there

2  is any such unauthorized disclosure or use of Confidential Material.

3       **22.      Other Actions and Proceedings**. If a Receiving Party (a) is subpoenaed in another

4  action or proceeding, (b) is served with a demand in another action or proceeding in which the

5  Receiving Party is a party, or (c) is served with legal process by one not a party to this Stipulation

6  and Order, seeking discovery materials which were produced or designated as Confidential

7  Information or Highly Confidential pursuant to this Stipulation and Order, the Receiving Party shall

8  give prompt actual written notice by hand or email to counsel of record for such Producing Party

9  within five (5) business days of receipt of such subpoena, demand, or legal process or such shorter

10  notice as may be required to provide the producing Party the opportunity to object to the immediate

11  production of the requested discovery material to the extent permitted by law.  Should the person

12  seeking access to the Confidential Information or Highly Confidential Information take action

13  against the Receiving Party or anyone else covered by this Stipulation and order to enforce such a

14  subpoena, demand, or other legal process, the Receiving Party shall respond by setting forth the

15  existence of this Stipulation and Order.

16       **23.      Order Survives Termination**.   This Stipulation and Order shall survive the

17  termination of this Action, and the Court shall retain continuing jurisdiction to enforce this

18  Stipulation and Order, make any amendment(s), modification(s), or alteration(s) thereto as may be

19  appropriate, and/or to resolve any dispute concerning the use, production and/or disclosure of

20  Confidential Material as provided herein.

21       DATED      this      *14*      day      of      *Feb*      ,      2019.

22  NERSESIAN & SANKIEWICZ                    CHRIS DAVIS, ESQ.

23

24  By:                                      By:

25  Robert A. Nersesian                      Chris Davis, Esq.
    Nevada Bar No. 2762                      Nevada Bar No. 6616
26  528 S. Eighth Street                     2535 Las Vegas Blvd S
    Las Vegas, Nevada 89101                  Las Vegas, NV 89109
27  Attorney for Plaintiff                   Attorney for Defendants

28

## ORDER

Based on the parties' stipulation, and for good cause showing,

**IT IS SO ORDERED**

DATED this ___19___ day of _____July_____, 2019

By: _____
Honorable Judge

## FORM ATTACHMENT "A"
## CONFIDENTIALITY AGREEMENT

I, _____, do hereby acknowledge and agree as follows:

1.      I have read the Stipulated Confidentiality Agreement and Protective Order of which the form of this Agreement is an attachment.

2.      I understand the terms of the Stipulated Confidentiality Agreement and Protective Order and agree to be bound by and to strictly adhere to all terms and provisions of the Stipulated Confidentiality Agreement and Protective Order.

3.      I hereby submit to the jurisdiction of the Eighth Judicial District Court of the State of Nevada, County of Clark, solely for the purpose of the enforcement of the Stipulated Confidentiality Agreement and Protective Order and this Agreement.


DATED this _____ day of _____, 2019


_____
(Signature)

_____

_____

_____
(Name, Address, Telephone Number)